# Richmond.

## Washington, Alexandria and Mt. Vernon Railway Co. v. Vaughan.

### January 12, 1911.

Absent, Cardwell, J.

1. Carriers—*Care Due to and by Passengers—Passing Over Tracks to Station.*—A railway company owes to one occupying the relation of a passenger, actually or constructively, a different and higher degree of care than it does to a traveller about to cross its track at a highway. While a passenger has the right to pass from the place where the car is stopped for him to alight to the station building or off its premises, and the railway company should furnish him reasonable and adequate protection against accident in the enjoyment of this privilege, the passenger is bound to exercise proper care and caution in avoiding danger. The degree of care to be exercised by him is governed by the danger to be encountered and the circumstances attending its exercise in the particular case.

2. Carriers—*Crossing Tracts at Station—Look and Listen*—The rule which requires a person to look and listen before crossing a railroad track has little, if any, application to a passenger where, by arrangement of the railway company, it is necessary for him to cross the track in passing to and from the depot and the cars which he is to take or leave.

3. Evidence—*Electric Railways—Failure of Light—Detached Trolley Poles*—In an action against an electric street railway company to recover damages for a personal injury, it is not error to permit a witness to testify that trolley poles frequently become detached from the wire, and that when they do there is no light inside the car and no electric headlight. This is a matter of common knowledge.

4. Evidence—*Prior or Subsequent Existence—Continuance—Discretion of Trial Courts*—Proof of the prior or subsequent existence of a thing is some indication of its probable existence at an earlier or later period, but the degree of probability is determined by the facts and circumstances of the particular case, and as it is

impossible to lay down any general rule as to the time or the conditions within which a prior or subsequent existence is evidential, the question of the admissibility of such evidence must be left largely to the discretion of the trial courts.

5. Evidence—*Lack of Headlights at Time of Injury—Proof of Subsequent Existence—Discretion of Trial Courts—Case at Bar*—Where it was alleged that a street car which inflicted an injury carried no headlight, and it was offered to prove by witnesses that the car passed them further on fifteen minutes after the accident and the headlights were burning, it is *held* that whether the length of time which had elapsed and the distance travelled between the place of the accident and where the witnesses offered saw the headlights burning were too great under the circumstances of the case to be of evidential value was for the trial court, in the exercise of a reasonable discreation.

6. Negligence—*Contributory Negligence—Burden of Proof—Instructions—Evidence of Plaintiff Himself*—To an instruction that the burden is on the defendant to prove the plaintiff's contributory negligence, it is proper to add "unless the testimony introduced on behalf of the plaintiff shows him to have been guilty of contributory negligence," but it is error to substitute for the words quoted "unless the jury believe from the evidence of the plaintiff himself that he was guilty of contributory negligence," as the jury might well believe from the latter that they could only consider the evidence of the plaintiff himself, and not the evidence of all the witnesses introduced by him, which is not a correct statement of the law.

7. Carriers—*Injury at Station—Passing Over Highway—Duty to Passenger—Street Railways*—In an action by a passenger against a street railway company for an injury inflicted on him immediately upon leaving its car and while passing along a highway to its station, no instruction should be given as to the duty which the defendant owed to a traveller on the highway as no such question is involved in the case. The fact that the passway from where he alighted to the station building was over and along a public highway does not affect the question of its liability. That fact does not change the degree of care which the defendant owed to the plaintiff who was still a passenger, and which is higher than that owing to a traveller on the highway.

8. Carriers—*Duty to Passengers—Greatest Possible Care—Proximate Cause—Street Railways*—In an action by a passenger against an electric street railway company to recover for a personal injury, it is not error to instruct the jury that the carrier owes to the

passenger "the greatest possible care and dilligence" for his safety. While various forms of expression as used to denote the care required in such cases, what is meant is that the carrier of passengers is bound to use the highest practical degree of care. But to demand this degree of care of the carrier, the plaintiff must stand in the relation of passenger, and the failure to exercise the care required must be the proximate cause of the injury complained of.

Error to a judgment of the Circuit Court of Alexandria county, in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Moore, Barbour & Keith*, and *Jas. R. & H. B. Caton*, for the plaintiff in error.

*Machen & Jesse*, and *Moncure, Wampler & Gloth*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The first assignment of error is to the action of the court in overruling a demurrer to the amended declaration and each count thereof.

This action was brought to recover damages for personal injuries suffered by the plaintiff whilst a passenger on the defendant's line of road—an electric railway, which it operated between Washington city and the city of Alexandria. Each of the three counts in the amended declaration makes averments which show that the plaintiff was a passenger for hire on one of the defendant's cars; that when he reached his destination at Addison, one of the defendant's stations, the train or car upon which he was travelling was stopped and he stepped on the opposite side of the road from the station

shed; that while crossing double tracks of the defendant going towards that shed in the night time, another train of the defendant, running on the other track, in the opposite direction, with no headlight displayed or whistle blown or other warning given, struck him, causing the injuries complained of.

As we understand the petition for the writ of error, the principal objection made to the sufficiency of the declaration is that the facts averred in each count show that the plaintiff was guilty of contributory negligence in going from the point where he left the defendant's car across its tracks toward its station building, in the absence of an averment that he looked and listened for an approaching train, before going upon the tracks upon which he was injured.

A railroad company owes to one occupying the relation of a passenger, actually or constructively, a different and higher degree of care than it does to a traveller about to cross its tracks at a highway. While a passenger has the right to pass from the place where the car is stopped for him to alight to the station building or off of its premises, and the railway company should furnish him reasonable and adequate protection against accident in the enjoyment of this privilege, the passenger is bound to exercise proper care and caution in avoiding danger. What degree of care and caution he is to exercise in a particular case must be governed by the danger to be encountered, and the circumstances attending its exercise. *Railway Co.* v. *Lowell*, 151 U. S. 209, 38 L. Ed. 131, 14 Sup. Ct. 281; *Warner* v. *B. & O. R. Co.*, 168 U. S. 339, 42 L. Ed. 491, 18 Sup. Ct. 68; *Terry* v. *Jewett*, 76 N. Y. 338; 6 Cyc. 607-8.

It is said in 2 Shear. & Red. on Neg., sec. 525, that "where a passenger is required to cross the company's intervening tracks in order to take his train or to leave it, or to change from one train to another, it is not *per se* negligence not to look and listen for approaching trains before so crossing. The passenger has the right to assume that the company will so

regulate its trains that the road will be free from obstructions and danger when passenger trains stop at a depot to receive and deliver passengers; and the rule which requires a person to look and listen before crossing a railroad track has little, if any, application where, by the arrangement of the company, it is necessary for passengers to cross the track in passing to and from the depot and the cars."

The facts averred in the declaration do not show that the plaintiff was guilty of contributory negligence as a matter of law, even if he failed to look and listen for approaching trains before he crossed the track of the defendant company in leaving its premises after alighting from its train.

Without discussing the other grounds of demurrer in detail, it is sufficient to say that each count states a good cause of action, and that the demurrer was properly overruled.

The second error assigned is as to the evidence of witness Rucker, set out in bill of exception No. 1. As the question involved in that assignment of error is not likely to arise upon another trial, it is unnecessary to pass upon it.

There was no error in permitting the witness, Sorrell, to testify that trolley poles frequently become detached from the wire, and when they do that there is no light inside the car and no electric headlight. That is a matter of common knowledge, and could not have prejudiced the defendant company.

The third error assigned is based upon a mistake of fact. It appears from bill of exception No. 3 that the witness, Sorrell, was permitted to state such facts as would explain why the defendant company did not obtain the name of the only passenger on the train which caused the plaintiff's injury and did not produce him as a witness.

The fifth assignment of error is based upon the refusal of the court to permit two witnesses to testify under the circumstances disclosed by bill of exception No. 4, which is as follows:

" * * * * after the plaintiff had introduced evidence, tending to show that at the time of the accident the car which collided with the plaintiff and injured him was lit by neither electric or oil headlight, and that the car was absolutely dark, and after the conductor and motorman had testified that at the time of the accident both electric and oil headlights were burning at the time of the accident, that the motorman had turned the current of the electric headlight when they started from Luna Park to Washington, on the night in question, and that the oil lamp had previously been lighted by an attendant of the company at 12th street and Pennsylvania avenue, in the city of Washington, at about fifteen or twenty minutes before eight, before said car had left the city of Washington for Luna Park, and that they had not lighted the oil light at all on that night, all of which will more fully and at length appear by reference to defendant's bill of exception, No. 5, which is hereby referred to and made a part of this bill of exception, the defendant to further maintain the issue upon its part, and to corroborate the testimony of the motorman and conductor, both of whom had previously testified that at the time of the accident both the electric and oil head lights were burning, introduced two witnesses, George Green and John Dunn, both of whom would have testified that they were employed at a point between Addison station and 12th street station in the city of Washington, the destination of the car which injured the plaintiff, and that said car, on its way to its destination passed by where they were employed about 15 minutes after the accident, and at that time both the electric and oil headlights were burning * * * *."

The objection made to the evidence rejected is that it was too remote in time and distance from the place of the accident, and that if the oil headlight was not burning at that time, "it would have been only natural that it should have been lighted very shortly thereafter, especially in view of the

fact, as the witness, Sorrell, testified, that the oil headlight was the only one used in passing through the city."

Where the existence of a thing at a given time is in issue, its prior or subsequent existence is, according to human experience, some indication of its probable existence at a later or earlier period. The degree of probability that a thing was in existence at a given time, from its existence at a subsequent period, will depend upon the likelihood of some intervening circumstance having occurred and been the true origin. 1 Wigmore on Ev., sec. 437.

The general principle that a prior or subsequent existence is evidential of a later or earlier one has been repeatedly laid down. But, says Prof. Wigmore, "that no fixed rule can be prescribed as to the time or the conditions within which a prior or subsequent existence is evidential is sufficiently illustrated by the precedents, from which it is impossible (and rightly so) to draw a general rule." Section 437.

The cases show that the principle has been applied to all manner of subjects (see notes to section 437 of Wigmore); but since it is impossible to lay down any general rule as to the time or the conditions within which a prior or subsequent existence is evidential, the question of the admissibility of such evidence must be left largely to the discretion of the trial courts. Whether the length of time which had elapsed and the distance travelled between the accident and where the witnesses offered saw the headlights burning was too great under the circumstances disclosed by the record, was for the trial court, in the exercise of a reasonable discretion, and we cannot say that its discretion was not properly exercised.

The next error assigned is to the giving of the plaintiff's instruction No. 1, as amended by the court.

It appears from bill of exception No. 6 that after the court had expressed its purpose to grant the instructions asked for by the plaintiff, "the defendant moved the court to amend instruction No. 1 by inserting the words, 'unless the testimony

introduced on behalf of the plaintiff shows him to have been guilty of contributory negligence,' immediately after the words, 'the burden is upon the defendant company to prove such contributory negligence by the preponderance of evidence;' but the court overruled said motion and in lieu thereof added the words, 'unless the jury believe from the evidence of the plaintiff himself that he was guilty of contributory negligence.' "

The amendment, as asked for by the defendant, was proper and the instruction ought to have been so amended; but, as amended by the court, under the circumstances disclosed by the record, it ought not to have been given. It was clearly susceptible of two constructions, one of which was erroneous, and the jury might very well have believed that in applying that instruction to the facts of the case they could only consider the evidence of the plaintiff himself and not the evidence of all the witnesses introduced by him. It was error to give the instruction as amended. *Va. Cent. R. Co.* v. *Sanger*, 15 Gratt. 230.

It is insisted that even if the instruction was erroneous it could not have prejudiced the defendant, since instructions numbered four and five, given on the defendant's motion, correctly stated the law upon that question, and because the evidence of the other witnesses introduced by the plaintiff did not tend to show that he was guilty of contributory negligence.

Instructions Nos. 4 and 5 were not directed to the question of the burden of proof, as was the plaintiff's instruction No. 1, but to the degree of care due from the plaintiff in crossing the track. Neither can it be said that there is nothing in the evidence of the other witnesses introduced by the plaintiff tending to show that he was guilty of contributory negligence.

The giving of instruction No. 2, offered by the plaintiff, is assigned as error.

This is not an action by a traveller on the highway to recover damages for injuries done him as such while crossing

the defendant's tracks, but is an action by a passenger to recover damages for injuries done him in going to the defendant's station house, or leaving its premises, immediately after alighting from its train and while the relation of passenger still existed. The fact that the pass-way from where he alighted to the station building was over or along a public highway does not affect the question. That fact did not change the degree of care which the defendant owed the passenger. The care which a railway company owes a passenger under such circumstances is, as we have seen in disposing of the demurrer in this case, a different and a higher degree of care than that which it owes to a traveller crossing its tracks over a public highway.

The instruction seems to have been based upon the view that the plaintiff was a traveller on the highway rather than a passenger making his way to the station house, or off its grounds, from the point where he alighted from the train. No instruction as to the duty which the defendant owed a traveller on the highway should have been given, because no such question was involved in the case, but as the degree of care required in the case of a passenger is different and higher than in the case of a traveller on a public highway, we do not see how the defendant could have been prejudiced by the instruction.

The remaining assignment of error which it is necessary to consider is the giving of instruction numbered three, offered by the plaintiff. That instruction is as follows:

"The court instructs the jury that when common carriers undertake to convey passengers by the powerful but dangerous agency of electricity, public policy and safety requires that they be held to the greatest possible care and diligence, and any negligence or default of such railway company, or common carrier, its agents or employees in such cases will make such company or carrier liable in proper and adequate damages under the statute, unless the jury believe from the

evidence that the plaintiff was guilty of contributory negligence."

One of the objections made to the instruction is that "no common carrier is required to use the greatest possible care and diligence," for the safety of its passengers, as declared by the instruction. What is meant by the language used in the instruction is that the carrier of passengers is bound to use the highest practicable degree of care, and that a failure to use it constitutes actionable negligence. Various forms of expression are used to define such care. The language of the instruction is almost identical with that of an instruction approved by this court in the case of *B. & O. R. Co.* v. *Wightman's Admr.*, 29 Gratt. 431, 445, 26 Am. Rep. 384, which declared, that "when carriers undertake to convey passengers by the powerful but dangerous agency of steam, public policy and safety require that they should be held to the greatest possible care and diligence, and any negligence or default in such care will make such carriers liable in damages under the statute."

An instruction containing identically the same language as that used in *Wightman's case* was approved in the case of *B. & O. R. Co.* v. *Noel's Admr.*, 32 Gratt. 394, 399.

Sometimes the degree of care required is defined or declared to be "the utmost care and diligence of very cautious persons" (*Connell* v. *C. & O. Ry. Co.* 93 Va. 44, 55, 24 S. E. 467, 468, 57 Am. St. Rep. 786, 32 L. R. A. 792; *Farish* v. *Reigle*, 11 Gratt. 697, 62 Am. Dec. 666); "the utmost care and diligence," (*N. & W. Ry. Co.* v. *Tanner*, 100 Va. 379, 382, 41 S. E. 721, 722; *Reynolds* v. *Richmond, &c. Ry. Co.* 92 Va. 400, 404-5, 23 S. E. 770, 771); "the utmost care and diligence which human prudence and foresight will suggest." (*Petmore* v. *Delaware, &c. R. Co.*, 102 N. Y., 24 N. E. 302, 17 Am. St. Rep. 629); "the highest possible degree of care and diligence." (*Indianapolis R. Co.* v. *Hoist*, 93 U. S. 291, 23 L. Ed. 898).

In discussing the language used in the last named case, which is substantially the same as that used in the instruction complained of, it was said: "The terms in question did not mean all the care and diligence the human mind can conceive of, nor such as will render the transportation free from any possible peril, nor such as would drive the carrier from business. * * * * The language used cannot mislead. It well expresses the vigorous requirement of the law, and ought not to be departed from. The rule is beneficial to both parties. It tends to give protection to the traveller, and warns the carrier against the consequence of delinquency."

The language used in the instruction, defining the degree of care which the law requires of a common carrier to its passengers, is fully sustained, not only by our own decisions, but by the authorities generally, and the trial court did not err in using it.

The instruction is objected to upon another ground, viz., that it makes the defendant responsible in the event of any negligence or default on its part, unless the plaintiff was guilty of contributory negligence, without reference to the question whether or not such negligence was the proximate cause of the injury, or whether the defendant owed the plaintiff any duty. The instruction is erroneous in these respects. Although the defendant may have failed to exercise the high degree of care due its passengers, yet if it did not owe that duty to the plaintiff, or if such negligence was not the proximate cause of the plaintiff's injury, it was not liable to him.

For giving instructions numbered one, and three, asked for by the plaintiff, in the form in which they were given, the judgment complained of must be reversed, the verdict set aside and the cause remanded for a new trial to be had not in conflict with the views expressed in this opinion.

*Reversed.*