# Wytheville

## CHESAPEAKE AND OHIO RAILWAY CO. v. PARKER'S ADMINISTRATOR.

### June 11, 1914.

1. APPEAL AND ERROR—*Two Trials Below—First Trial—Code, Section 3484.*—The phrase "first trial" used in section 3484 of the Code requiring this court, when there have been two trials in the lower court, "to look first to the evidence and proceedings on the first trial" refers to the first trial in which the ruling of the court was made the ground of exception, which is the first trial within the cognizance of this court. This may, in fact, be the second or a subsequent trial.

2. EVIDENCE — *Statements After Injury—Hearsay—Res Gestae.*—The statement of an injured party to an ambulance surgeon shortly after the injury as to the circumstances of the injury is not admissible as a part of the *res gestae*, nor as a part of an admission made. to other witnesses at a different time and on another occasion.

3. MASTER AND SERVANT—*Injury to Servant—Warning—Cars on Siding—Case at Bar—Demurrer to Evidence.*—Upon the evidence in the case at bar, a jury might have found, and hence on a demurrer to the evidence the court must hold, that .the defendant was guilty of negligence in putting the plaintiff's intestate to work in painting cars on a shifting track without notice of danger or protecting the cars on which he was to work with blue flags; that he had the right to rely upon that protection and was not guilty of contributory negligence; and that the negligence of the defendant was not a risk assumed by the plaintiff's intestate.

Error to a judgment of the Circuit Court of Henrico county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*D. H. & Walter Leake,* for the plaintiff in error.

*Hunsdon Cary* and *Edwin P. Cox,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This action was brought by the defendant in error, Robert L. Parker's administrator, to recover damages from the plaintiff in error, the Chesapeake and Ohio Railway Company, for the death of his intestate, which is ascribed to the defendant's negligence. Upon a demurrer to the evidence the jury assessed the plaintiff's damages at $4,000, for which sum the court rendered judgment, and the case is before us upon a writ of error to that judgment.

There were four trials of the case. At the first trial there was a hung jury. At the second trial the jury returned a verdict for the plaintiff for $3,500 which the court on motion of the defendant set aside as contrary to the law and the evidence, no exception being taken by the plaintiff. The third trial resulted in a verdict for the plaintiff for $7,000, which was likewise set aside by the trial court on the ground that it was contrary to the law and the evidence, to which ruling of the court on the third trial the plaintiff excepted, and its action is made the ground of cross-error.

It is insisted by the plaintiff in error that this cross-error cannot be considered because the alleged grounds of error do not apply to the first trial as prescribed by statute.

The statute in part reads: ". . except that when there have been two trials in the lower court, in which case the rule of decision shall be for the appellate court to look first to the evidence and proceedings on the first

trial, and if it discovers that the court erred in setting aside the verdict on that trial, it shall set aside and annull all proceedings subsequent to said verdict and enter judgment thereon.'' Code, sec. 3484.

The foregoing contention demands a too literal construction for a remedial statute. The third trial in this instance was the ''first trial'' in the sense that it was the first trial in which the ruling of the court was made the ground of exception. The statute which requires us to look to the proceedings in the first trial, of necessity refers to the first trial within the cognizance of the appellate court; otherwise, we would be called on to review a case which in its nature is not reviewable, or, stated differently, to do an impossibility.

The court's action in setting aside the second verdict was rested upon the admission of a statement made by Robert L. Parker to the ambulance surgeon shortly after the accident happened. In that connection it is only necessary to remark, that the statement in question was not a part of the *res gestae,* nor was it admissible as constituting part of an admission made by Parker to other witnesses at a different time and on another occasion. *Adams' Admr.* v. *Eamos,* 107 Mass. 275. In short the statement was a self-serving declaration pure and simple, dissociated from any other assertion or admission withdrawing it from the influence of the general principle that such declarations are inadmissible in evidence. There was no error, therefore, in the court's ruling in setting aside the verdict and granting a new trial.

This brings us to the consideration of the court's action on the fourth trial in overruling the defendant's demurrer to the evidence and entering judgment for the plaintiff for $4 000. the damages provisionally assessed by the jury. The evidence upon this phase of the case is so satisfactorily discussed by his honor, Judge R. Car-

ter Scott, as to warrant the adoption of his opinion on that branch of the case as the opinion of this court.

The learned judge, after announcing the rule applicable to a demurrer to the evidence, says: "Considering the evidence in the light of the rule just cited, it appears that R. L. Parker, about seventeen years of age, was employed by the Chesapeake and Ohio Railway Company as an apprentice painter and at the time of the accident had been working for the defendant company for about seventeen months, under one S. Boston, the boss painter, and that on the morning of the accident, directed by Boston, he went out on the yard of the defendant company to paint out the signs on the side of the cars, 'Tidewater Only.' The signs were placed about the middle of the car and near the top thereof, between ten and eleven feet from the ground. He was given a ladder, a paint bucket and brush, and had painted out the sign on the south side of the car, and when last seen by Boston, just prior to the accident, was on the north side of the track with his ladder up against the car and standing in the aisle by the ladder. Boston places him in this position, and testifies that he turned to go to the east end of the yard, directing Parker to follow him when he had performed this work, that is, had painted out 'Tidewater Only' from the north side of the car, and that he, Boston, had not walked more than a car's length or a little more when he heard the impact and Parker's cry. The evidence further shows that there were about seven or eight cars on the track on which Parker was working, two to the west of the car on which he was working and five to the east, and that the shifting force of the Chesapeake and Ohio kicked from the east on the track on which the car was, on which Parker had been painting, several cars; that there was no blue flag up to indicate that any one was working under or about said car; that the shifting crew were igno-

rant that any one was working on the said car, no information being given that cars would be kicked on said track, nor was he informed that it was dangerous to go in or about the car on which he was working. It further appears that upon the cars being kicked and the cry being heard, Boston and other employees of the railway company rushed in to the aisle between the tracks and found Parker lying on the ground with his foot and leg mashed; that he was taken up, put on an engine, carried to a house in the yard and the ambulance called for. The doctor arriving examined him and sent him to the Wm. Byrd Hospital where a further examination of him was made and a report made to the company. Parker died from the effects of his injuries. The plaintiff in this case alleges that the railway company was guilty of negligence in that they put R. L. Parker to work upon a car without giving him warning, as provided by Rule 26, or in any other way, that the car might, at any time, be moved by the shifting crew of the yard. It is replied that the work that he was doing was *on the side of the car,* in between the aisle; would take only a few minutes to do; that it was not of a dangerous character, and that it was the custom of the Chesapeake and Ohio Railway Company, as well as a general custom of all roads in doing this character of work, never to put up blue flags or to give any notice that this character of work was being done. But on the demurrer to the evidence it must be taken as true, that such is not the custom of railroads in this character of work. (See depositions of H. C. Sparks and testimony of Joseph W. Smith.) Upon the evidence, had the case been submitted to the jury, properly instructed, it would have been sufficient to warrant a finding by them that the defendant was guilty of the negligence charged in the declaration with respect to the want of due care in requiring flags to be put up for the protection of their employee and the

.enforcement of such rules and regulations, and inasmuch as this record shows that there was no instruction given by the defendant company to Parker that it was dangerous to go between the cars, under the well established rule cited above, and which governs the consideration of this case upon the demurrer to the evidence, this court must so hold.

"The defendant in this case relies upon R. L. Parker's contributory negligence. This is an affirmative defense and the burden of maintaining it is upon the defendant, and the question for the court to determine is upon a careful consideration of the evidence whether or not had the case been fairly submitted to a jury, under proper instructions, they would have been warranted in finding from the evidence that R. L. Parker was free from such negligence as would have barred his right to recover in this case.

"The rule as stated above is that, when the consideration of the evidence is taken from the jury by the demurrer, if the jury could have found therefrom that the demurree was free from such negligence contributing proximately to the cause of his injury, the court must so find. Now what is the evidence as to Parker's contributory negligence? The report says: 'Full particulars of the cause of injury as given by the patient: *Was getting a bucket full of paint from between the cars when another car was shoved up against it and knocked me down running over my foot.'* The defendant company draws the inference and strongly argues that if he went between the cars, and the court must take this fact as proven (which is by no means certain) then it cannot be said that he was not guilty of contributory negligence, and the jury would not be justified in drawing any other conclusion than that he was guilty of contributory negligence, and therefore the court on the demurrer to the

evidence should so hold. But what are the facts proved in this case? That a boy, seventeen years old, was given a ladder, directed to go up on the side of cars on this ladder and to paint out 'Tidewater Only' from the sides of the cars. The record is silent as to what knowledge he had that the car would be moved. It is true he had been with the company seventeen months, but there is nothing to show that any car had been bumped into whilst he was doing any work thereon. The evidence in this case further shows that on the morning of the accident he had gone up and painted out 'Tidewater Only' from the south side of the car, and the jury would have the right to presume from the evidence when he went to that car in the morning to do the painting, that he put his bucket on the bumper as soon as he reached the car, and that having performed the work on the south side of the car, with his ladder he passed around the end of the two cars on the west of the track, passing over the track and to the north side of the cars; that after placing his ladder against the car he then went to the end of the car on the bumper of which the paint bucket stood and reached for it and while in the act of reaching for the bucket the impact came, he was knocked down and the injuries received from which he died. Under the facts as proved in this case, would not the jury have a right to say that an ordinarily prudent man would have acted in like manner under the circumstances, and is this not a matter especially for the jury and not for the court to determine as a matter of law?

"I have heretofore considered 'The report of accident,' as relied upon by the defendant as showing contributory negligence as an absolutely true and uncontradicted account of how the injury occurred, and have reached the conclusion that the jury would have been justified in saying that under the evidence the deceased

was not guilty of contributory negligence, but is the court justified in saying that this report must be taken as an absolutely true account?

"The report was made out by an interne, Crowgey by name, in the Wm. Byrd Hospital, who signed Dr. Henson's name to the report, 'Per C.' It appears from the evidence of Dr. Henson that he and the interne did not agree in many particulars in the evidence given in this case. Crowgey testifies that when young Parker was brought to the hospital he was suffering a great deal from his injuries, that at the time he gave him the 'full particulars of the cause of injury' he was *'wavy'* in his mind, and at times during the questioning was not rational. Under such circumstances is the court, or would the jury, be justified in saying that this report was true and showed the manner in which the injury oc-curred? It appears from the uncontradicted evidence of the doctors, an examination of the shoe, and the physical facts, that young Parker could not have been standing on the track, else his foot would have been cut off. Considering carefully all the evidence in the case, can the court say that the jury would not have been justified in finding that the report was not accurate, but that Parker was on the ladder, in the line of his duty, painting out the words 'Tidewater Only' from the north side of the car when the impact occurred, and that he was thrown therefrom and, without fault on his part, injured. It seems to the court that the jury could have so found had the case been submitted to them under proper instructions.

"Therefore, I am of opinion that it is a matter for the jury to determine and that they had a right, under the facts and circumstances of this case, to draw the conclusion that Parker acted as an ordinary prudent man would under the same circumstances, and was not guilty

of contributory negligence (*Atlantic Coast Line* v. *Grubbs,* 113 Va. 214, 74 S. E. 144). The court is further of the opinion that from the evidence in this case the jury had a right to draw the conclusion that the injury to the plaintiff's intestate was not one of the risks assumed in his employment, and the court must so hold. From the facts of this case, as considered upon this demurrer to the evidence, the court is of opinion that the demurrer must be overruled and a judgment entered in accordance with the verdict of the jury.''

If under the evidence, as the circuit court has correctly found, Parker was entitled to the protection of Rule 26, that finding eliminates all of the grounds assigned by the defendant in its demurrer to the evidence. (a) It shows primary negligence on the part of the company in suffering Parker to work on the shifting track without protecting the cut of cars upon which he was ordered to work with blue flags. (b) He had a right to rely upon that protection, and, therefore, was not guilty of contributory negligence even upon the defendant's theory of the accident. And (c) The *negligence* of the employer is not a risk incident to the employment which the employee assumes.

The judgment complained of is without error and is affirmed.

*Affirmed.*