Richmond.

SHENANDOAH VALLEY LOAN AND TRUST CO. V. MURRAY.

March 15, 1917.

1. STREETS AND HIGHWAYS—*Obstructions—Evidence.*—Where there was testimony that defendant's employees painted a house to which a telephone wire was attached, that immediately before the painting the wires were securely fastened to the porch of the house, and, that they were seen immediately after such painting to be unfastened from the porch and the ends loosely wrapped around a tree, the jury were warranted in concluding that the unfastening was done by defendant's employees, no other agency being shown in evidence.

2. STREETS AND HIGHWAYS—*Obstructions—Telephone Line.*—A telephone wire was originally constructed over a public road by and for the accommodation of the former owner of the land. While the defendant after its purchase of the land at no time itself made use of it, the jury were warranted in concluding that the defendant allowed it to remain there because it was of value to its property in view of its being there ready to use. In this situation, the duty rested upon the defendant to use due care to keep the wire in a reasonably safe condition for the public to pass under it. Even though the wire was not a fixture, and for that reason the ownership of it did not pass to defendant, yet since the wire was left to remain over the public road for the benefit of or advantage to the property of defendant, it was its duty to exercise the due care in question, although the wire at the point at which it became a nuisance was not the property of defendant.

3. STREETS AND HIGHWAYS—*Obstructions.*—Where the defendant knew that a telephone wire was sagging over a public road, resulting from its own act in unfastening it from a porch, in ample time to have abated the nuisance before an accident occurred, or by the exercise of reasonable care it could have so known, it was guilty of negligence in not abating the nuisance.

4. STREETS AND HIGHWAYS—*Duty of Traveler.*—Every one has the right to presume that a public highway is in a reasonably safe condition. A traveler on a public street or road, however, is

held to the exercise of ordinary care, and what is ordinary care, of course, differs in different situations.

5. Streets and Highways—*Contributory Negligence.*—Where plaintiff while riding in a buggy was injured when the buggy struck a telephone wire sagging across the road, which she, or the person driving her, could have seen if they had been looking for the wire, or looking up and not on the road, the question of plaintiff's contributory negligence was for the jury.

6. Declarations and Admissions — *Self-Serving Declarations.*— Statements made by the plaintiff to a doctor as to her suffering from injuries are admissible, although she had employed him for the purpose of making him a witness in the action which she had determined to institute to recover damages for such suffering and injuries. The circumstance only goes to the weight of the evidence. The diagnosis of plaintiff's condition, made by the doctor under these circumstances, is admissible without an instruction from the court as to the weight to be given thereto by the jury, where no instruction on the subject was asked by defendant.

7. Expert and Opinion Evidence—*Opinion of Non-Expert.*—A statement of a non-expert witness that the plaintiff "seemed to be suffering and nervous," was admissible. Not all conclusions of fact of a non-expert witness are inadmissible in evidence. If it is clear that the jurors were, or could have been, as fully and as exactly furnished with the data which formed the basis for the conclusion of the witness as the latter was, the conclusion is inadmissible in evidence; if not, it is admissible.

8. Evidence—*Streets and Highways—Negligence of Adjoining Landowner.*—In an action for injuries occasioned by the sagging of a telephone wire across a public road, where the landowner allowed the wire installed by a previous owner to remain, testimony that the cost of installing a new 'phone would be less if the wire were allowed to remain was admissible as having a direct bearing upon the question whether the telephone wire was allowed by the landowner to remain across the public road because it was of value to its property.

9. Streets and Highways—*Negligence of Landowner—Evidence.*— In an action for damages occasioned by the sagging of a telephone wire, testimony as to the condition of the wire about two months after the accident was admissible within the discretion of the court, in the absence of evidence of any change in the condition, where the lapse of time did not necessarily involve a change in the condition.

10. E FENCE—*Prior or Subsequent Existence.*—The general principle that a prior or subsequent existence is evidential of a later or earlier one has been repeatedly laid down, but no fixed rule can be prescribed as to the time or the conditions within which a prior or subsequent existence is evidential. The admissibility of such evidence must be left largely to the discretion of the trial court.

11. STREETS AND HIGHWAYS—*Obstructions—Evidence.*—In an action against a landowner for negligently allowing a telephone wire to sag across a public road, evidence that, as against another landowner, the telephone company claimed to own the wires connecting his house with the line, was inadmissible, it not being shown that the same contract existed between the company and the two landowners, but, on the contrary, it appearing that the telephone company did not own the wires in the case at bar.

12. NEW TRIAL—*Excessive Damages.*—Plaintiff was confined in bed about five weeks as a result of the accident, and for the first year after the accident was a nervous wreck, some days being able only to work part of the day.

*Held:* That a verdict of $1,000 was not excessive.

Error to a judgment of the Circuit Court of Fairfax county, in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*M. L. Walton* and *John W. Rust,* for the plaintiff in error.

*Moore, Keith, McCandlish & Hall,* for the defendant in error.

SIMS, J., delivered the opinion of the court.

This is an action by defendant in error for personal injury caused by the sagging of a telephone wire extending from a pole on land belonging to plaintiff in error, beyond the boundary line of such land, across a public road. The

former was plaintiff and the latter defendant in the court below, and they will be hereinafter referred to as plaintiff and defendant.

There was a demurrer to the declaration, upon seven grounds of demurrer. The demurrer was overruled by the trial court. This action of such court is made the basis of the first assignment of error.

Thereupon there was a trial by jury resulting in a verdict for the plaintiff for $1,000. The action of the court in overruling a motion of the defendant to set aside such verdict and grant a new trial, on the ground that it was contrary to the law and the evidence, is made the basis of the second assignment of error.

There are eleven other assignments of error.

The questions arising upon the second assignment of error include, in effect, all questions arising upon the demurrer to the declaration; hence, it is not necessary for us to discuss separately the first assignment of error. The questions arising upon all of said assignments of error will be considered in their order.

Preliminary to such consideration, the following facts of the case, material thereto, will be stated, with such supplementary statements of them later as may be deemed necessary in connection with the several questions considered below. In ascertaining such facts the case is, of course, considered as if upon demurrer to the evidence by the defendant.

### FACTS OF THE CASE.

The evidence is conflicting as to whether the sagging of the wire which caused the injury was due to its being taken and allowed to remain loose on the side of the road of defendant's land, or because of its insecure fastening on the opposite side of the road on the land of another. The testi-

mony shows that the wire was not sagging, but was fastened up at a height of some 23 or 24 feet, in good condition, at the time the land of defendant was conveyed to it, about two years and five months before the accident.

There were two telephone wires of a metallic circuit across the road. Only one of these later sagged. The boundary of defendant's land did not extend into, but stopped on the south side of, the public road. The wires were erected and owned by the former owner of the land, for use in connection with a telephone in the dwelling house. The telephone was rented of a telephone company, but the wires were not, being furnished by the said owner. The telephone had been removed before the conveyance of the land to the defendant, but the wires remained, and at the time of such conveyance were securely fastened to the porch of the house, extended thence about 35 feet to a tree in the yard, on which they were fastened to insulators on brackets, thence they passed to the top of a telephone pole set in the ground on the margin of defendant's land near the road, thence above and across the road to trees on the land of another named Huntington. There was, therefore, no sagging of the wire at the time defendant became the owner of the land. The sagging occurred afterwards.

There was no eye-witness who testified as to who un-. fastened the wires from the porch, but there was testimony that the defendant, by its employees, painted the house about a month after the conveyance of the land to it; that the wires were securely fastened as aforesaid immediately before, and that they were seen immediately after such painting was done to be unfastened from the porch and the ends loosely wrapped around a tree near the porch. No other agency was shown in evidence to have caused this unfastening of the wires. The jury were, therefore, warranted in concluding that this was done by defendant through its employees, the painters.

There was the testimony of the agent of defendant who had charge of and looked after the property for it that he saw that the wires were detached from the porch three or four months after the defendant became the owner of the land. The condition of the wires· then, as seen by this agent, was that the ends, which had been fastened to the porch, were hanging down loose from the tree. The defendant did not by this agent, or any other, fasten the loose ends of these wires.

There was testimony of witnesses for plaintiff to the effect that from four or five months before the accident one of the wires was sagging across the road, due to its having been loosened by a tree falling across the telephone line on the Huntington side of the road; that witness took the wire which was sagging, drew it up tight about 12 feet above the road, high enough to permit a buggy to pass under it without catching if the buggy was in the middle of the road, but possibly not high enough to prevent a load of hay from catching on it; and wrapped the wire four or five times around a fence post on the Huntington side; that after the accident it was in the same position as he left it; that after he fixed it, it did slip from that side. This witness further testified that while the right of way for it might have been 30 feet, the road itself was narrow and just wide enough to drive in; and Mr. Jerman, who was driving the plaintiff in his buggy at the time of the accident, testified that he was driving in the middle of the road.

There was other evidence bearing on this question of fact, but it is deemed unnecessary to state it in more detail here, as this court cannot try the case upon a question of fact where the evidence is conflicting. It is sufficient to say that it was conflicting and that there was sufficient evidence to warrant the jury in finding that the initial cause of the sagging of the wire across the road

low enough to cause the accident resulting in injury to the plaintiff, was the act of the defendant, through its employees, in taking loose the wires from the porch; that is to say, there was sufficient evidence before the jury to warrant it in finding that the act of the defendant caused the nuisance of the sagging wire across the road from which the plaintiff received her injury.

At the time of the accident one of the wires had sagged down so low over the road as to catch on the top of the buggy in which plaintiff was seated, although the top was two-thirds turned back, and to come within 18 inches or two feet of her head. As to when the wire reached and how long it had remained in this condition before the accident, there was evidence before the jury which warranted them in finding that such condition existed for three or four months before the accident.

The road was straight as the plaintiff approached the place of accident for some distance, and the sagging telephone wire could have been seen by the plaintiff if she had looked for it, from a sufficient distance away for her to have avoided the accident. But there was no evidence that the plaintiff, or the person driving her, knew before the accident of the condition of the wire, or had their attention called to it, except by the presence of the wire itself hanging over the road.

The accident, the resulting injury to the plaintiff, etc., occurred as follows, in accordance with the testimony of the plaintiff and of Mr. Jerman, her employer, who were the only witnesses to the occurrence: Plaintiff, a typewriter, in the employment of Mr. Jerman, was in his top buggy, and was being driven by him, the horse in a slow trot, up a slight grade in the road. It was about 11 o'clock A. M., a bright, clear day. Plaintiff and Mr. Jerman were looking in the direction of defendant's property, discussing it as compared with a piece of property Mr. Jerman had

72

bought. They had to look up the road to look at the property. Plaintiff was looking at stumps in the field before they got opposite the house, then at the house; the house was about opposite to her when the wire struck the buggy; her sight was all right; the road was level. If the plaintiff or Mr. Jerman had been looking for the wire, or looking up and not on the road, they could have seen the wire; but they were not looking up in the air, and it was hard to see a wire the size of that which caused the accident. The wire caught the top of the buggy and pulled the top off; plaintiff was thrown out and her right foot must have caught under a little iron part of the running gear of the buggy, and she was dragged about 50 yards while the horse was running. The horse ran away as fast as it could, requiring all the energy of Mr. Jerman to stop it. As a result of the fall and dragging, plaintiff was bruised and injured on and about her back, hips and legs, and she continued to be sick at her stomach next day, but went to Fairfax to work. She had not been sick before for ten years. After she got to Fairfax, the day after the accident, she felt so sick that she called Dr. Moncure into Mr. Jerman's office; she then went to Dr. Moncure's office and he examined her and gave her some medicine; she then returnd to her home at Ballston, Va. She was confined in bed about five weeks as a result of the accident; and for the first year after the accident she was a nervous wreck; some days she would only be able to work part of the day. She suffered with her hips and head, and she continued to suffer up to the trial of the case with her hips, back and side. Dr. Moncure saw her once at her home at Ballston, and Dr. Howard Fletcher right often. Mr. Jerman also testified that "she seemed to be suffering and nervous."

On the subject of the wires, brackets, insulators and telephone pole on the land of defendant, and the wire extending from such land across the road, the deed to defendant

was introduced in evidence, which was in the usual form of a deed of bargain and sale from a trustee who has sold land under a deed of trust, and contained no reservation or mention of pole, wires or attachments. On this subject there was testimony for plaintiff that the former owner of the land, pole, wires and attachments did not claim or exercise any acts of ownership over the poles, wires and attachments after the conveyance to the defendant. There was testimony also tending to show that the allowing of the poles, wires and attachments to remain on the land of defendant was of value to the property, in that they were there ready for use in the event any occupant of the land wished to install a telephone, and in such case would save expense in having a 'phone installed.

We will now consider the several questions arising upon the assignments of error in their order as stated below.

1. Was there any duty resting upon the defendant to exercise due care to keep the telephone wire in question, where it extended beyond defendant's premises across the public road, in a reasonably safe condition for the public to pass under it?

We think that such duty did rest upon the defendant.

As noted above the wire in question was originally constructed over the public road by and for the accommodation of the former owner of the land of defendant. The purpose for which it was there was obvious. While it is true that the defendant at no time itself made that use of it, the jury were warranted in concluding that defendant allowed it to remain there because it was of value to its property in view of its being there ready for such use. In this situation, the duty rested upon defendant to use due care to keep the wire in question in a reasonably safe condition for the public to pass under it—certainly to the extent that defendant's use of its land might affect the condition of the wire where it crossed the public road.

We think the principle underlying the following cases is applicable to the case before us.

As was said in *Canandaigua* v. *Foster*, 156 N. Y. 354, 50 N. E. 971, 41 L. R. A. 554, 66 Am. St. Rep. 575, which was a case in which a recovery was allowed of damages paid by the trustees of the village on account of personal injuries sustained through an accident caused by a defective grating in a sidewalk: "It was his duty, however, as long as he owned and was in full possession of the premises, to use reasonable diligence to keep the grate in repair, so that it would be as safe as any other part of the sidewalk. *Congreve* v. *Morgan,* 18 N. Y. 84, 72 Am. Dec. 495; *McGuire* v. *Spence,* 91 N. Y. 303, 43 Am. Rep. 668; 2 Shearm. & Redf. Neg., 5th ed., sec. 703. It was built for his accommodation, and was a benefit to his property only; and the law placed upon him the obligation of using due care to keep it in a suitable and safe condition for the public to walk over it as a part of the sidewalk. Proper construction, in the first place, was not enough to relieve him from liability; but the duty of inspection and repair continued while he owned and was in the exclusive possession of the premises. The duty ran with the land as long as the grate was maintained for the benefit of the land. As was said as early as *Heacock* v. *Sherman,* 14 Wend. (N. Y.), 58, 60, the owner 'is bound to repair * * * in consideration of private advantage.' The doctrine of implied duty, which is well established by the authorities, requires the person who, even with due permission, constructs a scuttle hole in the sidewalk in front of his premises, to use reasonable care for the safety of the public, as long as it remains there and is subject to his control. *Babbage* v. *Powers,* 130 N. Y. 281, 29 N. E. 132, 14 L. R. A. 398; *Wolf* v. *Kilpatrick,* 101 N. Y. 146, 4 N. E. 188, 54 Am. Rep. 672; *Jennings* v. *Van Schaick,* 108 N. Y. 530, 15 N. E. 424, 2 Am. St. Rep. 459; *Port Jervis* v. *First Nat. Bank,* 96 N. Y. 550; *Daven-*

*port* v. *Ruckman,* 37 N. Y. 568; *Swords* v. *Edgar,* 59 N. Y. 28, 17 Am. Rep. 295; *Briggs* v. *New York C. & H. R. R. Co.,* 30 Hun. (N. Y.), 291; *Heacock* v. *Sherman,* 14 Wend. (N. Y.), 58; *Seneca Falls* v. *Zalinski,* 8 Hun. (N. Y.), 571; *Whalen* v. *Gloucester,* 4 Hun. (N. Y.), 24; *Mathews* v. *De Groff,* 13 App. Div. 356, 43 N. Y. Supp. 237; Elliott, Roads and Streets, p. 541; Thomas, Neg., 1145.

\*  \*  \*  \*  \*,  \*

"That duty included proper construction in the first place, and reasonable care on the part of the owner to keep the grate in repair thereafter as long as he continued in possession. The duty sprang from the necessity of having safe sidewalks, and, as the necessity is continuous, so is the duty. Upon no other ground can the construction of the grate in a sidewalk, which is an interference with a public highway, be justified, even when permission is duly granted. Upon the transfer of the entire interest and possession to another, as the duty runs with the land, it would be cast upon the grantee.

\*  \*  \*  \*  \*  \*

"If he parts with the premises, or parts with the possession thereof for a period, the burden falls on his successor in title or possession."

In the case of *Allen* v. *Linquist,* 43 App. D. C. 538, which was a case of personal injury received from a gate swinging over a sidewalk from a fence, not on, but in front of the defendant's premises, which the latter had the right to use as appurtenant to his ownership of his lot, the court said: "The right of Allen to use the parking was an appurtenance passing to him with the fee in the lot. Being such, so long as he permitted the fence to stand and enclose the parking, presumably for his private convenience, he was responsible for its condition \* \* \* The fence was built for the protection and accommodation of the abutting property. When Allen purchased the property, the fence

and the right to use the enclosed parking passed as appurtenant thereto. He was not required to keep the fence there; but, so long as he permitted it to remain, he was responsible for its condition and proper repair."

The opinion proceeds: "The rule here is not different from that applied where property owners construct for their own use openings under and through the sidewalk in front of their premises. In such cases the property owner is held liable if the sidewalk, by reason of such use, becomes a nuisance, or in such repair as to cause injury to a person using the walk."

In this view of the case before us, it becomes unnecessary to consider the position of counsel for defendant that the telephone wire was not a fixture, and for that reason the ownership of it did not pass to defendant. If that position were conceded to be correct, yet, since we must regard as a fact in the case that the wire was left to remain over the public road for the benefit of or advantage to the property of defendant, it was its duty to exercise the due care in question, although the wire at the point at which it became a nuisance was not on the property of defendant.

2. Was there sufficient evidence to warrant the jury in finding that the defendant was guilty of negligence in not abating the nuisance?

As we have seen above, this is not the case of a nuisance existing at the time the defendant became the owner of its property—not the case of a nuisance caused by an act of a former owner of the property. It is a case of a nuisance caused by an act of the defendant itself, and there was evidence before the jury that the nuisance had existed for three or four months prior to the accident. The jury might have well concluded from the evidence that the defendant either knew of such condition of the wire, resulting from its own act in unfastening it from the porch, in ample time to have abated the nuisance before the accident, or that by

the exercise of reasonable care it would have so known, and, hence, that it was guilty of negligence in not abating the nuisance.

3. Was the plaintiff guilty of contributory negligence which should bar her recovery?

We think not.

This was a question of fact for the jury. We have referred above to the points in the testimony bearing upon this subject. We cannot say as a matter of law that the plaintiff was guilty of negligence *per se* so as to take this question from the jury. It is true it has been repeatedly held by this court that a traveler on a public street is held to the exercise of ordinary care (*Osborne* v. *Pulaski Light & W. Co.*, 95 Va. 16, 27 S. E. 812; *Moore* v. *City of Richmond*, 85 Va. 545, 8 S. E. 387), and this is equally true of a traveler on a public road. But what is ordinary care of course differs in different situations.

As was said by this court in *Watts* v. *Southern Bell T. & T. Co.*, 100 Va. 45, 40 S. E. 107, "Every one has the right to presume that a public highway is in a reasonably safe condition. * * *"

In *Weaver* v. *Dawson, &c. Telephone Co.*, 82 Neb. 696, 118 N. W. 650, 22 L. R. A. (N. S.) 1189, the plaintiff was seated on a hayrack, riding along a public road when injured by coming in contact with a telephone wire. With reference to the contention that he was guilty of contributory negligence, the court said: "This contention is not well founded. Driving along a road under a telephone or telegraph wire properly constructed is not attended by any danger. It is unlike crossing a railroad, where a train is liable to pass at any time, and the rule which would require a person about to cross a railroad to stop and look before so doing has no application to a person driving along either a public or private road which is crossed by telephone or telegraph wires. The plaintiff did not observe that the wire was down, or that it was likely to strike his hayrack."

In *Penn. Telegraph Co.* v. *Varnau* (Pa.), 15 Atl. 624, the plaintiff's intestate was on top of a load of furniture driving along a public road. He had passed the point opposite and was looking back at some persons working in an adjacent field, when he was struck by a wire across the road, was knocked off and killed. On the claim of the defendant that there was contributory negligence, the court held that it was a question of fact for the jury.

The case of *Jacks* v. *Rieves*, 78 Ark. 426, 95 S. W. 781, is a well considered and instructive case. There the plaintiff was injured by the top of her surrey coming in contact with a telephone wire sagging across a public highway, which frightened her horse, and the plaintiff, in her fright, jumped out of the surrey and was injured. The court, among other things, said: "It is not expected or required of a traveler driving easily along the middle of a much traveled highway to be looking up to see if perchance a stray wire is in reach of the top of a vehicle."

In *Lloyd* v. *Railway Company*, 110 Ga. 165, 35 S. E. 170, referring to the plaintiff and the driver of his carriage, the court said: "They were upon the street where they had the right to be, and were driving in an ordinary manner, and had no reason to apprehend that a wire would be across their pathway, and there was nothing to put them upon their guard against such an obstruction. When a person is in the habit of traveling the streets of a city, day after day, and those streets are clear of obstruction, whether ordinary care would require that he should look out for unusual obstructions, we, as a court, do not know. Whether he ought to see a wire the size of the little finger, when he is looking straight ahead in the direction of the wire and could have seen it at a much greater distance, if his attention had been called to it, is, it seems to us, a question for the jury and not for the court."

The question of whether the doctrine of imputable negligence, which was involved in the case of *Atlantic & Danville R. Co.* v. *Ironmonger,* 95 Va. 625, 29 S. E. 319, is applicable to the case before us, discussed by counsel for defendant, need not be considered by us, as we do not think there was anything in the conduct of Mr. Jerman, the driver of the buggy, which amounted to contributory negligence *per se.*

In connection with the question of contributory negligence in the case at bar, it should perhaps be noted that there was a conflict between the testimony of the plaintiff and her own witness, Mr. Jerman, on the matter of whether the sun was shining in her face so that she could not see the wire. She testified that such was the case. Mr. Jerman testified to the contrary and stated that they were traveling in a direction which placed their backs to the sun. This was peculiarly for the consideration of the jury. It went only to the credibility of the witnesses, and as to which, if either, the jury believed stated the facts correctly. Besides, the plaintiff's case did not turn wholly upon the circumstance mentioned.

4. Were statements made by the plaintiff to Dr. Moncure, that "she was suffering with pain in her left hip and back and from the small of the back down her left side, and that she had a very bad headache, and other statements of the plaintiff to such doctor as to how she was suffering," admissible in the testimony of Dr. Moncure?

We think they were.

The testimony does not make it clear whether the plaintiff had determined to institute suit at the time she consulted Dr. Moncure, and that she employed him with the purpose of making him a witness in case of suit. Counsel for defendant contend that this was the fact. In such case, the authorities are in conflict as to the admissibility of such statements. A number of cases are cited to sustain the

73

position that they are inadmissible. We think, however, that the weight of authority and of reason is in favor of their admissibility, even though made after the commencement of the suit and with the purpose of using the physician as a witness. The circumstance that they are then made goes only to the weight of the evidence. 8 R. C. L., p. 640 and note; 21 L. R. A. (N. S.) 827; 16 Cyc. 166; where the authorities cited and relied on by counsel for defendant are referred to. The case of *C. & O. Ry. Co.* v. *Parker,* 116 Va. 370, 8 S. E. 183, cited by such counsel does not appear to have involved statements of the plaintiff's intestate in regard to his physical condition in connection with a consultation of the ambulance surgeon with respect thereto, but statements with respect to occurrences at the time of the accident.

5. Was the testimony of Dr. Fletcher relating to his diagnosis of the plaintiff's condition, made after the suit had been decided on, admissible without an instruction from the court as to the weight to be given thereto by the jury?

We think it was, for reasons stated next above, as no instruction on the subject appears from the record to have been asked by the defendant.

6. Was the statement of the plaintiff's witness, Mr. Jerman, that the plaintiff "seemed to be suffering and nervous," admissible in evidence?

We think it was.

This was a statement of fact. It is true it was to some extent a conclusion of fact—of inference from data observed by the witness; but not all conclusions of fact of a non-expert witness are inadmissible in evidence. The test of admissibility of a conclusion of fact of a non-expert witness is this: Is it clear that the jurors were or could have been as fully and as exactly furnished with the data which formed the basis for the conclusion of the witness as the latter was? If so, the conclusion is inadmissible in evidence; if

not, it is admissible. Wigmore on Ev., secs. 1917-8-9, 1920-1, 1924, 1926, and cases cited; *Hot Springs, &c. Co.* v. *Revercomb,* 110 Va. 240, 65 S. E. 557. The citations from Wigmore on Evidence require a reading of all of them to fully develop the subject. We regret that their length prevents quotation from them here on a question arising so frequently in practice.

Applying the test above stated, we think the testimony in question was admissible.

The cases of *Atlantic Coast Line R. Co.* v. *Caple's Admx.,* 110 Va. 515, 66 S. E. 855, and *Overdy* v. *C. & O. Ry. Co.,* 37 W. Va. 524, 16 S. E. 813, cited and relied on by counsel for defendant, are not in conflict with this conclusion.

7. Was the statement of one of plaintiff's witnesses, "That if the company" (defendant) "had installed another 'phone in the Kidwell house, the same pole and wires could be used, if intact, and that in such event the company" (the telephone company) "would only charge for the work done in installing the 'phone," admissible in evidence?

We think it was.

This testimony had a direct bearing upon the question whether the telephone wire was allowed by defendant to remain across the public road because it was of value to its property. This was a material issue in the case. Therefore, the authorities cited by counsel for defendant on this point to the effect that evidence bearing on no issue in the case, or very remotely bearing on an issue therein, should be excluded, are inapplicable.

8. Was the testimony admissible of one of the witnesses for plaintiff as to this condition of the wires about two months after the accident?

We think that it was within the discretion of the court to admit such testimony in evidence in a case such as that at bar, in the absence of evidence of any change in the con-

dition. This is not a case where the lapse of time in question necessarily involved a change in condition.

In *Washington, &c. R. Co.* v. *Vaughan*, 111 Va. 785, 791, 69 S. E. 1035, 1037, this court said: "Where the existence of a thing at a given time is in issue, its prior or subsequent existence is, according to human experience, some indication of its probable existence at a later or earlier period."

And again on the same page: "The general principle that a prior or subsequent existence is evidential of a later or earlier one has been repeatedly laid down. But, says Prof. Wigmore, 'That no fixed rule can be prescribed as to the time or the conditions within which a prior or subsequent existence is evidential is sufficiently illustrated by the precedents, from which it is impossible (and rightly so) to draw a general rule.' "

And again: "Since it is impossible to lay down any general rule as to the time or the conditions within which a prior or subsequent existence is evidential, the question of the admissibility of such evidence must be left largely to the discretion of the trial courts."

We do not think that the authorities *Potomac, &c. R. Co.* v. *Chichester*, 113 Va. 333, 74 S. E. 162; 1 Wigmore on Ev., sec. 437; *Wash. Alex. & Mt. Vernon R. Co.* v. *Vaughan; supra;* 10 R. C. L. 943; and 29 Cyc. 614, cited and relied on by counsel for defendant, are in conflict with this conclusion.

9. Was the ruling of the court below erroneous in refusing to permit a defendant's witness to testify that the telephone company had taken the 'phone out of a house witness had in hand for sale as a real estate agent; that witness asked the telephone company's permission to remove the wires which were left on such property, and that the telephone company refused such permission, saying that the wires belonged to the company?

We think not.

In that case the telephone company claimed to own the wires. It is not shown in evidence in the case at bar that the same contract with the telephone company existed as in the case referred to by the witness. On the contrary, it is expressly shown in the case at bar that the telephone company did not own the wires.

10. The court below gave the following instruction (among others) at the request of the plaintiff:

"A. The court instructs the jury that every deed conveying land shall, unless an exception be made therein, be construed to include all buildings, privileges and appurtenances of every kind belonging to the land, and if they believe from the evidence that the telephone loop, consisting of a pole, wires and attachments was installed on the Kidwell property in 1907, for the convenience of the owner of the said property and that the telephone company did not own or retain any interest or exercise any acts of ownership over said telephone pole, wires and attachments and that they remained on said property after the telephone was taken out in December, 1910, and were there when *Maurice* Kidwell and Ruth G. Kidwell executed the trust deed of April 26, 1910, and when said trust was foreclosed on May 18, 1911, and that the deed by which the property was conveyed to the defendant company contained no reservation of ownership of the pole, wires and attachments and that the owner of the said property during all the period between December, 1910, and the time of the accident to the plaintiff had the right and privilege to use said pole, wires and attachments for the installation of another 'phone, then the court instructs the jury that said pole, wires and attachments passed under the deed of May 18, 1911, to the defendant and became its property."

Counsel for defendant take the position that this instruction was erroneous on three grounds, which will now be considered in their order.

(a) Because such instruction was without evidence to support it.

Counsel refer to the statements of several witnesses, among them to that of Follin, to the effect that the wires "were of no use to the owner of the property except to put in another telephone again;" of Church, "that if another 'phone had been installed in the Kidwell house, the same pole and wire could be used if intact, and that in such case the (telephone) company would only charge for the work done in installing the 'phone." There was also testimony to the effect that the telephone company never owned these wires, and was not operating them at the time of the accident; that Mrs. Kidwell, the former owner of the farm, once owned them and had them installed for her use and benefit as occupant of the farm; that she left them attached to the freehold and laid no claim to them after the sale of the farm to the defendant.

We, therefore, do not think this ground of objection to the instruction is well taken.

(b) Because the instruction does not state a proposition of law, even if the facts as stated are true.

Counsel give no reasons for their position. We do not think it is tenable.

(c) Because the instruction is ambiguous.

We do not think the instruction open to this objection.

11. The court below gave also the following, among other instructions, at the request of the plaintiff:

"B. The court instructs the jury that if they believe from the evidence that the wire which injured the plaintiff sagged from the Kidwell side by virtue of the fact that it was detached from the house and insecurely wrapped around a tree near the house on that side after the Kidwell property passed to the defendant company, and that the sagging which caused the wire to injure the plaintiff did not come from the Huntington side, and that for three or

four months before the injury the wire had been gradually sagging from the Kidwell side so that it was a danger and menace to the traveling public, and that during all this time the defendant company had full control and dominion over the said Kidwell property and wire, and knew of its sagging condition, or could have ascertained the same by ordinary diligence, it thereupon became the duty of defendant to use due care to either remove said wire from across the public road, or to so fasten and secure it that it would not be a danger or menace to the traveling public, and if they further believe the defendant company failed to perform this duty, and as a direct and proximate result of such failure plaintiff was injured without negligence on the part of herself or the driver of the buggy, their verdict should be for the plaintiff."

Counsel for defendant claim that there was no evidence to support this instruction.

As noted above, there was a conflict in the evidence with respect to which side of the road the wire slacked from in order to sag across the road. It did not break over the road or within the line of the poles and post to which it was fastened on each side of the road and in that way fall down in the road. It sagged down over the road. The physical fact was that, in order to do so, of necessity it must have given way and slipped from one side or the other, or from both sides of the road—from defendant's property or from the land on the opposite side of the road, or from both. There was evidence of the loose ends of the wires left unfastened, or insecurely fastened, on the side of defendant's land, for a long time before the accident, to account for the sagging of the wire. In view of the testimony of defendant's own agent as to what he knew of the location and condition of the wires from a time over two years before the accident, there was also, as above noted,

evidence to warrant the jury in finding that the defendant knew of or by the exercise of reasonable care ought to have known of the dangerous condition of the wire over the road, in more than sufficient time to have abated the nuisance before the accident, and that the defendant was therefore guilty of negligence in not so doing.

Therefore, we do not think the objection made to this instruction is well grounded.

12. The court below refused to give the following instruction at the request of the defendant:

"(6) The court instructs the jury that if the plaintiff could have seen the wire in question if she had looked at it, and that if they believe from the evidence that she was not looking to the front, but that her face was turned away in the direction of the Kidwell house, then she was guilty of gross negligence and is not entitled to recover."

This involves the same question as to contributory negligence considered in our third heading above. For the reasons there given, we think the court committed no error in declining to give this instruction.

13. Was the verdict for $1,000 so excessive as to constitute error in the ruling of the court below refusing to set the verdict aside?

We think not.

There is no evidence of any prejudice or passion on the part of the jury. We do not consider the amount of the verdict as such evidence, under the circumstances of this case, and hence we do not think this point well taken.

One objection to the ruling of the court below in allowing Mr. Browning, the agent of the defendant, to be asked as to his failure to fasten the wires after he saw them hanging loose, is not specifically noticed above, for the reason that such objection was made on the ground that

the defendant owed no duty with respect to keeping the telephone wires over the road in a reasonably safe condition for the public to pass under them. This ground has been fully considered and discussed above.

Upon the whole case, we are of opinion, for the reasons stated above, that there was no error in the judgment complained of, and it will be affirmed.

*Affirmed.*