## Wytheville.

### MINERVA ALICE ERLE v. CITY OF NORFOLK, ET AL.

#### June 12, 1924.

1. NEGLIGENCE—*Pleading and Proof.*—Where the basis of an action is negligence, it is necessary for the plaintiff to allege the negligence in his declaration and prove it by a preponderance of the evidence.

2. STREETS AND HIGHWAYS—*Sidewalks—City not an Insurer—Ordinary Care Only Required of City.*—A city is not an insurer of the safety of pedestrians on its sidewalks, but is only bound to use ordinary care to keep its sidewalks in a reasonably safe condition for the use of pedestrians lawfully using them, and who exercise ordinary care for their own safety.

3. STREETS AND HIGHWAYS—*Sidewalks—Liability of City—Notice of Defects.*—It is not sufficient for a plaintiff merely to prove a defect in the sidewalk, and an injury resulting to him therefrom, in order to hold the city liable therefor. This does not establish negligence on the part of the city. He must go further, and as a general rule must show notice, actual or constructive, to the city of the existence of the defect, for until the city has such notice it has not failed to exercise the care required by law, and is not negligent.

4. STREETS AND HIGHWAYS—*Sidewalks—Constructive Notice of Defect.*—A city is chargeable with constructive notice if a defect in a sidewalk has existed for such length of time that, in the exercise of ordinary care, it should know thereof.

5. STREETS AND HIGHWAYS—*Sidewalks—Constructive Notice of Defects—Case at Bar.*—In the instant case, an action for injuries from a fall due to a defect in a sidewalk, it was conceded that the city had no actual notice of the defect. The hole complained of was a large one, but it was not clear how it was made. It might have been caused by a gradual wearing away of the concrete, or by a sudden break. The policeman on the beat called by the plaintiff, whose duty it was to report all defects in the sidewalks, testified that it "had not been done long, because I come over it every night," and that if the hole had been there and had been dangerous he would have seen it. There was nothing in the testimony of the plaintiff sufficient to establish the fact that the hole in the pavement had been there sufficiently long to give the city constructive notice. Giving due weight to the plaintiff's testimony, and to the evidence on her behalf, it was more

probable that the pavement was broken only a short time before the accident.

*Held:* That the evidence did not show that the city had constructive notice of the defect.

Error to a judgment of the Circuit Court of the city of Norfolk, in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Coleman & Willis* and *N. T. Green,* for the plaintiff in error.

*R. W. Peatross* and *Edmund S. Ruffin, Jr.,* for the defendants in error.

BURKS, J., delivered the opinion of the court.

The plaintiff in error, who was plaintiff below, while walking along one of the principal streets of the city of Norfolk on the night of January 31, 1921, stepped into a hole in the concrete sidewalk and fell, sprained her ankle, and suffered other injuries. She sued the city, and there was a verdict in her favor for $1,500.00, which the trial court set aside, and entered judgment for the city. Of this she complains.

[1-4] The basis of the action was the negligence of the city. This it was necessary for the plaintiff to allege in her declaration, and to prove by a preponderance of the evidence. The city was not an insurer of the safety of pedestrians on its sidewalks, but was only bound to use ordinary care to keep its sidewalks in a reasonably safe condition for the use of pedestrians lawfully using them, and who exercised ordinary care

for their own safety. It is not sufficient for a plaintiff merely to prove a defect in the sidewalk, and an injury resulting to him therefrom, in order to hold the city liable therefor. This does not establish negligence on the part of the city. He must go further, and as a general rule must show notice, actual or constructive, to the city of the existence of the defect, for until the city has such notice it has not failed to exercise the care required by law, and is not negligent. It is chargeable with such notice if the defect has existed for such length of time as that, in the exercise of ordinary care, it should know thereof. These general principles are well settled, and are not disputed. *Newport News* v. *Scott's Adm'x*, 103 Va. 794, 50 S. E. 266; *Richmond* v. *Mason*, 109 Va. 546, 65 S. E. 8; *Portsmouth* v. *Houseman*, 109 Va. 554, 65 S. E. 11, and cases cited.

[5] The plaintiff, admitting the general rule requiring notice to the city of the defect, sought to bring herself within it by proving constructive notice. It was conceded that there was no actual notice. The sidewalk was made of concrete, and the hole complained of ran across the walk, and was two or three feet long, from three to eight inches wide, and from one and a half to four inches deep, taking the estimates of different witnesses. The location of the hole is in front of a large grocery store, and is on one of the principal streets of the city, traversed by large numbers of pedestrians daily. It is not clear from the record how the hole was made, but the theory advanced was that it was by hand trucks, run over it from the curbing to the entrance of the grocery, and the theory rather than evidence of the plaintiff was that it was a gradual wearing away of the concrete and of long standing.

The plaintiff was called to the stand twice in her own behalf. At first she testified as follows:

"Q. I want to know whether it was a worn place in

the sidewalk, or washed out, or whether the sidewalk appeared to be worn out or cut up?

"A. I couldn't say because I didn't see it until after my fall. Then I was suffering too much to look. It was an absolute hole in the ground because I could feel the soft earth when my foot went down in the hole.

"Q. There was no pavement in the hole?

"A. Absolutely nothing in the bottom but dirt.

"Q. You know it was how deep?

"A. It was approximately three or four inches deep, from the way it threw me."

When called the second time, she became more positive as to the extent of her investigation and the result thereof, and testified as follows:

"Q. Mrs. Erle, did you examine the conditions—did you look at the hole after you fell in it?

"A. I did. I felt my hand around to see the cause of my fall.

"Q. Was it a new break or an old break?

"A. It was absolutely not a new break. There was no concrete—

\*    \*    \*    \*    \*    \*    \*    \*    \*

"Q. Did this appear to be a new break or an old break?

\*    \*    \*    \*    \*    \*    \*    \*    \*

"Q. From the appearance?

"A. From the appearance it had been there for sometime. I took my hand and felt around to locate the cause of my fall.

"Q. Was it an old break or a new break?

"A. As far as I could tell there was no concrete around. I couldn't see any, and I didn't feel any. I took my hand, while lying on the pavement before any one came to my assistance.

"Q. What was in the bottom of the hole?

"A. Sand and dirt. It was absolutely soft in the bottom."

She also called in her behalf the policeman who assisted her into an automobile after she was hurt, and he testified that the scene of the accident was on his beat, that it was one of his duties to look for and report on all defects in the sidewalks, and that he had passed over the place every night for thirty nights prior to the night of the accident, and had not seen the hole. He testified further that he saw "some pieces of concrete in the hole," that "they often use hand trucks in going up and down on the sidewalk," that the walk "had the appearance that something broke it in and crumbled it up," and that the cement had a ragged edge. He also expressed the opinion that the break "had not been done long, because I come over it every night," and that "if that hole had been there and had been a dangerous hole" he would have seen it. If the break had existed for any length of time, it must have been discovered by some of the thousands of people who passed over it daily, but no one of them was offered as a witness by the plaintiff to establish that fact. The testimony of the only witness introduced by the plaintiff contradicts her theory, and her own testimony only raises a presumption and from this she seeks to infer notice to the city. There is nothing in the testimony of the plaintiff sufficient to establish the fact that the hole in the pavement had been there sufficiently long to give the city constructive notice of it. Giving due weight to the plaintiff's testimony, and to the evidence on her behalf, it is more probable that the pavement was broken in only a short time before the accident and that the broken pieces were recovered by the person who broke it, than that the broken pieces had remained there for such a length of time that the city,

in the exercise of ordinary care, ought to have discovered it.

In *Looney* v. *Metropolitan R. Co.*, 200 U. S. 480, 26 Sup. Ct. 303, 50 L. Ed. 564, it is said: "Negligence of the defendant will not be inferred from the mere fact that the injury occurred, or from the presumption of care on the part of the plaintiff. There is equally a presumption that the defendant performed his duty."

The case is controlled by *Portsmouth* v. *Houseman, supra*, where the court recognized the weight to be given to the verdict of the jury, but also said: "When it is seen, as in this case, that the facts as determined by the jury do not in law fix actionable negligence upon the defendant, and that the jury's verdict in favor of the plaintiff is plainly against the law, it is the duty of this court, upon writ of error, to reverse the judgment of the trial court, set aside the verdict, and direct a new trial of the case."

It was well said by the trial court: "In this case there is no evidence of actual notice to the city and none of constructive notice, except testimony of certain witnesses that the place in the concrete might have been worn, but it may not have been broken until it had worn and would not have become a defect until it broke and the hole existed.

"Plaintiff's own witness, Barrom, testified that the break did not exist until the night of the plaintiff's fall and injury complained of in this case. The city having no notice of the defect cannot be held to be negligent, and the verdict must be set aside and judgment entered for the defendant."

Counsel for the plaintiff in error cited and relied upon *Jamieson* v. *Edmonton*, Ann. Cas. 1918-B, 379, from the Supreme Court of Canada. Aside from the fact that the court was not unanimous, and that it reversed the judgment of the Supreme Court of Alberta, the

case goes much further than we have heretofore gone, and holds municipalities to a higher degree of care than we have imposed. The facts and holding in that case are briefly stated in a note to that case as follows:

"It appeared in the reported case that teamsters were in the habit of driving across a wooden sidewalk at a certain place, and that this practice had continued for over a year. As a result thereof the sidewalk became broken and was in a dangerous condition, whereby a pedestrian was injured. The dangerous condition existed but a few hours prior to the injury and the municipality had no actual notice thereof. It is held that since the municipality was expressly charged by its charter with the duty of keeping the sidewalk in repair it was liable for the injury."

It may be observed further of that case that the sidewalk was of perishable material, wood, and the city was chargeable with knowledge of the fact that the permitted use of it was likely to cause it to be worn and broken, and in such case a greater degree of watchfulness would be required than over a concrete walk over which only hand trucks were used. Municipal corporations must take notice of the tendency of timber to decay, or to weaken or break when subjected to constant use. 2 Elliott on Roads & Streets (3d ed.), sec. 808.

We find no error in the judgment of the trial court and it is accordingly affirmed.

*Affirmed.*