# Wytheville

## IDA M. TYLER v. CITY OF RICHMOND.

June 10, 1937.

Present, Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*L. C. O'Connor* and *W. C. Parkinson,* for the plaintiff in error.

*James E. Cannon* and *Ordway Puller,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

Mrs. Ida M. Tyler proceeded in the court below by notice of motion for judgment against the city of Richmond to recover damages for personal injuries received by her resulting from a fall on one of the unimproved sidewalks of the city. At the conclusion of plaintiff's evidence, the court, upon motion of the defendant, struck out all of the evidence which had been introduced by the plaintiff. This action of the court resulted in a verdict and judgment for the defendant. The object of the present writ of error is to reverse that judgment.

Mrs. Tyler, a married woman, employed by the American Tobacco Company, was returning to her home on the night of July 10, 1935, about 10:30 o'clock when the injury complained of occurred. She lived at 1308 Bryant Street, one of the outlying districts of the city of Richmond. While walking upon the unpaved sidewalk on the south side of Littlepage street her foot became entangled in an obscured chain which was lying in a growth of grass and weeds on the sidewalk. One end of the chain was fastened to the end of the tongue of a wagon sprinkler which belonged to the city. The fall resulted in serious injuries to Mrs. Tyler.

The place where Mrs. Tyler fell was dark. The nearest street light was half a block away. The sprinkler had been placed upon a vacant lot in such a manner that the tongue extended some three feet over the sidewalk. There were no lights or other warning signs upon the sprinkler or the tongue and chain.

Several days prior to the time when Mrs. Tyler received her injuries the tongue had been removed from the sprinkler by employees of the city and a new one fitted and installed. It was painted when installed and new chains attached to it.

Mr. Tyler, the husband of the plaintiff, testified that the employees of the city left the sprinkler on the lot on Monday or Tuesday, which was July 8th or 9th, and it was then that the new tongue was installed. He also said they left the sprinkler near the sidewalk and about 12 to 15 feet

from the alley with the tongue projecting over the sidewalk.

From the testimony of the witness Corker, the attorney for the city seeks to establish the fact that after the new tongue had been fitted, placed in the sprinkler and painted on July 8th or 9th, some one removed the tongue, so that it was not in the sprinkler on the 9th when Corker looked at it; and that it was attached to the sprinkler on the 10th when Corker looked at it again; but the evidence, according to the argument of the City Attorney, does not show that an employee of the city replaced the tongue in the sprinkler after the 9th when Corker noticed its absence; therefore, he says, no employee of the city was shown to have replaced the tongue or to have left it obstructing the sidewalk. He further argues that no actual or constructive notice of the obstruction was given the city, and therefore, there could be no liability on the city for the plaintiff's injuries.

The attorney for the city interprets Corker's testimony as establishing that the sprinkler was in the alley on July 9th with no tongue in it.

Witness Corker obviously was confused as to dates. He first said that on July 10th the sprinkler was "standing at the corner of the alley on Mr. Tyler's sidewalk and I took notice of it that it wasn't any tongue in it that night. On July 11 I come in and I took notice it was a tongue in it." Later he said that he was mistaken as to the dates and that he meant the 9th instead of the 10th. His language was, "The 9th I come in the alley and the sprinkler was in the alley with no tongue in it and July 10th when I come in I taken notice it was a tongue in it and newly painted with chains hanging down the end of it." He also said the tongue was obstructing all of the sidewalk except three feet adjacent to the curb.

It is also obvious that Corker was not accurate in his statement as to where the sprinkler was located on the lot. He first said it was at the corner of the alley on Mr. Tyler's lot. . He next said it was "in the alley," and still later, as

previously stated, he said the tongue obstructed all but three feet of the sidewalk.

Corker's testimony is demonstrably inaccurate and conflicting. No one can read it impartially and ascertain just what he meant either as to the dates mentioned or the place where the sprinkler was. However, from his testimony it is quite clear that the tongue was protruding partially across the sidewalk and the chain was obscured by the growth of grass and weeds.

There is no plat of the physical surroundings and no testimony from which we may obtain an accurate picture of the conditions. We do not know from the evidence whether it was physically possible for the sprinkler to have been in the alley and the tongue to have protruded over the sidewalk.

The appropriate rule of law controlling cases of this kind is that ordinarily a municipality is not liable for injuries to travelers upon a public highway caused by obstructions of which it had no notice either actual or constructive. But where the obstruction in the street or highway which caused the injuries to the traveler was placed there by the servants or agents of the municipality it is liable to the traveler for such injuries whether it had notice or not. *Pratt* v. *City of Cohassett*, 177 Mass. 488, 59 N. E. 79; 29 C. J., secs. 453 and 477; *Sonja Nevala* v. *City of Ironwood*, 232 Mich. 316, 205 N. W. 93, 50 A. L. R. 1189; see also, annotations following this case in 50 A. L. R. beginning at page 1193; *Mary Butler, Adm'x* v. *City of McMinnville*, 126 Ore. 56, 268 P. 760, 59 A. L. R. 381; 13 R. C. L., sec. 278, page 338.

Applying that legal principle here, we may conclude that if the jury could have found from the evidence that the sprinkler was negligently placed upon the vacant lot by the servants of the city; that the tongue protruded over the sidewalk causing the chain attached to the end of the tongue to extend to and lie upon the sidewalk, and that the

plaintiff, without negligence upon her part, caught her foot in the chain and fell thereby causing the injuries for which she has brought her action, the city would be liable for damages for the injuries sustained by her regardless of whether it had notice of the obstruction on the sidewalk.

Upon a motion to strike the evidence of the plaintiff at the conclusion thereof, we must draw all fair and reasonable inferences from the evidence in favor of the plaintiff, and if, upon a consideration of the entire evidence, it might reasonably support a verdict for the plaintiff, the motion should be overruled. In the case at bar, after we fairly interpret the evidence in the light of the rule and allow the plaintiff the reasonable inferences that flow therefrom, we must conclude that a jury might have found in her favor without resort to conjecture or speculation. In other words, we think the evidence might have justified a finding by the jury that the servants of the city negligently placed the obstruction on the sidewalk and as a proximate result of such negligence she was injured.

It is contended by the city that Mrs. Tyler was guilty of contributory negligence. The contention is founded upon the following question and answer by Mrs. Tyler when she was being examined upon direct examination: "Were you looking where you were walking?", to which she replied: "No sir; I was just coming along walking like I always did." From this answer alone, it is argued that Mrs. Tyler was guilty of contributory negligence as a matter of law which bars her recovery.

It was her duty to exercise ordinary care for her own safety upon the occasion in question. What amounts to ordinary care is generally for the jury to decide and depends upon the circumstances of each particular case. Ordinarily a pedestrian may assume that the sidewalk is unobstructed, certainly until he has some knowledge to the contrary. He is not bound to keep his eyes constantly fixed to the sidewalk. *Bashford* v. *Rosenbaum Hardware Com-*

*pany*, 120 Va. 1, 90 S. E. 625; *City of Staunton* v. *Kerr*, 160 Va. 420, 168 S. E. 326. There was evidence tending to show that the chain which caused Mrs. Tyler to fall was obstructed by the growth of grass and weeds on the sidewalk.

While she was bound to exercise ordinary care and had no right to "walk by faith," yet from the circumstances then existing, the testimony tending to show the darkness, the grass and weeds obstructing the chain, whether she exercised the degree of care required of her, was for the jury. If she had been very careful and had looked constantly at the sidewalk she might not have seen the obscured chain. Certainly, more than one reasonable conclusion could be reached from the evidence. This being true the question of Mrs. Tyler's contributory negligence was not for the court but for the jury.

The judgment is reversed and the case remanded for a trial by a jury.

*Reversed and remanded.*