# Wytheville

CLARENCE J. BUCK v. CITY OF DANVILLE.

June 9, 1941.

Record No. 2377.

Present, Campbell, C. J., and Holt, Gregory, Browning and Spratley, JJ.

*Aiken* and *Sanford & Johnson,* for the plaintiff in error.

*E. Walton Brown,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

On September 26, 1939, in the afternoon somewhere between 5:30 and 5:50, Clarence J. Buck fell and was hurt on a Floyd street sidewalk in the city of Danville. Night had not set in but it was dusky. He sought to recover damages from the city and in his motion for judgment charged that it was negligent. A jury gave him a verdict of $500.00. That verdict the court set aside and entered final judgment for the defendant. This, it was charged, was error and is the only error assigned.

The sidewalk on Floyd street is paved with concrete blocks about two feet square and two inches thick, set to form a diamond pattern. To fill out the pattern some were cut in half and were placed with base towards the property line, with angle or apex towards the street.

Earth was leveled off and covered with two inches of sand, and on this for a base these concrete blocks were laid. This work was done twenty or twenty-five years ago. It was on or over one of these half sections that plaintiff fell.

From the evidence a jury might have believed that its base had been hollowed out, possibly by water from a nearby roof. Mrs. Lily M. Goodman said:

"There was a space between it (these blocks), but the way the rock was laying, just the edge of it—the middle corner—just the edge of it was on the other one, and when he stepped on it, it give with him."

Edwin Goodman gives this description of conditions there:

"Well, the sidewalk, where it was laid in them diagonal blocks, like, there was one edge sitting up on the other one in a peak, and he stepped on the edge of that one and flopped over and hurt his ankle." * * * "If you would step on one side, it would raise up like that."

Plaintiff said that he was coming up the street, spoke to a child—said "hello"—and "stepped on the block and fell flat on my face." * * * "my foot went down between the two blocks, and I fell face-foremost and twisted my foot," and that he did not trip on the stone.

"Q. 'I stepped on a block that was loose, and it turned with me, causing my right foot and ankle a terrific wrench'—is that right?

"A. It tilted."

He further said:

"A. Well, I will say at the narrow point. In other words, that is the peak of the half-stone where they say —the witnesses say—was sitting up on the edge of the rocks. I will say the narrowest point was an inch and a half open."

S. W. Arthur, a witness for the city and who had been sent to make repairs, said that one of these half blocks was just a little turned, that it was solid under the block but that the block was a fraction higher than the others

and was tilted where water had been dripping from the house.

Mrs. Sally Parker said that this block had worked loose and that she had seen other people stumble over it; that other blocks in that immediate neighborhood were also out of condition, and that this situation had continued for more than two years. If the corner of this two-inch concrete slab was resting upon another slab then it is not surprising to find that people had been stumbling over it.

This type of pavement is no longer in common use but still serves in many cities. Many cases of this kind are borderline cases.

In *City of Richmond* v. *Rose*, 127 Va. 772, 102 S. E. 561, 105 S. E. 554, neither the facts nor the law were in dispute, and yet we find a distinguished judge, Judge Prentis, unable to concur in the opinion of the court which held the city liable. There a cement block had been lifted by the roots of a shade tree until the inner edge had been lifted one-half an inch and the other edge two inches above the level of the sidewalk. The city appears to have had only constructive knowledge of this situation. All authorities agree that the city is not an insurer, and they also agree that it must exercise reasonable care and do those things which are reasonably necessary to make sidewalks safe for pedestrians.

We have not overlooked the decisions of this court in *City of Roanoke* v. *Sutherland,* 159 Va. 749, 167 S. E. 243, and *City of Staunton* v. *Kerr,* 160 Va. 420, 168 S. E. 326, but as was said in *Rose's Case,* decided cases are not very helpful and we must look to the particular facts in the particular case. While that in judgment is exceedingly close and while the essential facts are not seriously in dispute, we are of the opinion that it was a jury question and that the verdict should be reinstated. The jury might well have believed that the city was negligent in permitting what was in substance a trap to remain unrepaired for more than two years. It was

charged with the duty of maintenance. There was in substance no inspection; a city official did at times ride down the street in a truck and look at the sidewalk. Since this was a busy street part of his time was probably taken up in proper efforts to avoid accidents. If this unsafe situation was not known to the city, it should have been known.

The jury's verdict should be reinstated and final judgment entered.

*Reversed.*