BARRY, Respondent, v. CITY OF BUTTE, Appellant.

(No. 8296.)

(Submitted May 4, 1943. Decided October 15, 1943.)

[142 Pac. (2d) 571.]

*Mr. P. E. Geagan,* for Appellant,

*Mr. Harlow Pease,* for Respondent,

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an action for damages for personal injury. In the spring of 1938 the city of Butte caused a catch basin to be installed in an alley running into Iron Street. On May 23, 1939, the plaintiff, after having been taken for a drive by her son, stopped to call on a friend, Abbie O'Neil, at 111 West Iron Street. In order to avoid a pool of water in front of the O'Neil residence, the son drove the car into the alley adjoining the O'Neil property. The car sank into the ground and was stalled. The plaintiff got out and stepped upon what appeared to her to be dry ground, but which was near an excavation which had been made to install the catch basin. The ground gave way under her and she sank some three feet into the mud and water that was just beneath the surface and was rescued with some difficulty by the son and taken into the O'Neil home. Mrs. O'Neil had been attracted by the plaintiff's exclamations and came to help the son get the mother into the O'Neil residence, where she was cared for until she could be taken to her home.

The evidence is that plaintiff complained of her back just after the accident and could not stand alone nor sit in a chair with comfort. She was confined to her bed for four weeks under the care of her physician.

This action is predicated upon the negligence of the city as to the defective installation of the catch basin and the defective filling and inspection thereof made after the catch basin was installed. A special demurrer to the complaint, which was overruled, was grounded chiefly on the alleged absence of any notice to defendant of defective conditions in the alley. The answer

reiterates the absence of such notice, and further alleges insufficiency of the complaint as to the extent of plaintiff's injury, if any, and then alleges as an affirmative defense that the work done in installing the catch basin was performed by the W. P. A., and the inspection on completion was made by that organization. When plaintiff's case in chief was submitted and she had rested, defendant moved for nonsuit, which was denied. After all the evidence was in defendant moved for directed verdict, which was also denied.

Plaintiff sued for $5,165 and the jury awarded her $800. The appeal is by the defendant city which assigns errors as follows: (1) On denial of its motion for nonsuit; (2) on denial of its motion for directed verdict; (3) that the evidence is insufficient to establish actionable negligence on the part of the defendant; and (4) the court's refusal to give defendant's proposed instruction 15A.

Assignments of error 1, 2 and 3 are closely related, being predicated upon insufficiency of the evidence to sustain a verdict, and will be considered together.

On the question of the insufficiency of the evidence, the general rule is that, where no prejudice appears on the part of the jury, questions of fact come within the sole province of the jury. (*Fulton* v. *Chouteau County Farmers' Co.*, 98 Mont. 48, 37 Pac. (2d) 1025; *Koppang* v. *Sevier*, 106 Mont. 79, 97, 75 Pac. (2d) 790, and cases cited.) Where the record presents a conflict in the evidence resolved by the jury, that determination must stand if the evidence, fully considered, furnishes reasonable grounds for different conclusions. (*Morton* v. *Mooney*, 97 Mont. 1, 11, 33 Pac. (2d) 262.)

As to the motion for nonsuit and later the motion for directed verdict, "no cause should ever be withdrawn from the jury unless the conclusion from the facts necessarily follows, as a matter of law, that no recovery could be had upon any view which could reasonably be drawn from the facts which the evidence tends to establish." (*Cain* v. *Gold Mountain Min. Co.*, 27 Mont. 529, 71 Pac. 1004, 1005.) The evidence is in conflict, but

sufficiently substantial in favor of the contentions of the plaintiff to sustain the verdict.

The evidence clearly shows that the installation of the catch basin was so defective as to render it utterly useless for the purpose intended; that it extended above the surrounding ground "like a chimney;" that water flowing down the alley ran around and passed the catch basin, formed a pool and soaked into the ground; that this condition had existed for more than a year prior to the accident, and that immediately after the accident the catch basin was lowered by removing the brick of which it was constructed from the top to the extent of about one foot, and thereafter the water flowed into it. The evidence further shows that the city officials were immediately notified of the accident and appeared on the scene in a short time with a truck loaded with slag, pulled the stalled car out and dumped the slag into the hole from which plaintiff had been rescued. The fact that the catch basin was too high to allow the water to flow in and reach the flood sewer is not contradicted. Pools of water were impounded near the defective catch basin, soaked into the ground and caused the dirt that was used to fill the excavation to sink, leaving a top crust that appeared to be dry when the plaintiff stepped out, and gave no warning of the muck and mud underneath.

The catch basin extending above the surrounding ground resulting in the impounding of water following the melting of snow or after a heavy rainfall, such condition having existed for more than a year, clearly evidenced defective installation and constituted sufficient notice to the city that should have resulted in correction within a reasonable time.

Defendant contends that there is no evidence to show the extent of plaintiff's injuries. There is some conflict in the testimony of the two physicians called by the respective parties, plaintiff's attending physician and another who, at the instance of the defendant, examined the plaintiff, but there is no conflict as to the testimony relative to the plaintiff's meeting with the accident and, as a result thereof, being confined to her bed and

under the care of her physician for four weeks or more, and there is no conflict in the evidence as to the plaintiff having been subjected to a very distressing and painful experience by being plunged into a pool of muddy water, all due to the failure of the city authorities carefully to inspect the filling of the excavation in the first instance, and the failure to note and correct for more than a year a defective condition surrounding the catch basin that was apparent to anyone taking casual notice thereof.

City officials are charged with the duty to keep in touch with the condition of the city's streets and alleys and are not to be excused if they fail in the performance of that duty. The plea that the installation of the catch basin was made by the W. P. A. is immaterial. The answer of the defendant admits that it is the duty of the city to maintain its streets and alleys in a safe condition for use by the public, and that duty maintains irrespective of who builds and maintains its streets, sidewalks and other improvements.

The degree of care imposed upon both the city and one who makes lawful use of municipal facilities constructed and maintained for public use is specifically enumerated in *Tiddy* v. *City of Butte,* 104 Mont. 202, 65 Pac. (2d) 605, to which case reference is made for the authorities as to the respective obligations of the parties to this action.

On the assignment No. 4, relative to the court's refusal to give defendant's proposed instruction 15A, that instruction is predicated upon section 5080, Revised Codes, as amended by Chapter 122 of the Session Laws of 1937. The substance of that section is that no city or town shall be liable for any damage to persons or property for defects in any property or structure under the control of municipality unless it first be shown that the municipality had notice of the defect causing the injury. The municipality, however, shall not be excusable if it does not give warning to the public in some manner, such as placing flags or signs at the place where the defect exists, until repairs are made. The rule is that if, as here, the defective condition is due to the act of the municipality itself, or to its negligence, no notice to the

municipality of such condition is necessary, even where actual notice is expressly required by statute. It is only when the defect or danger arises from other means than an act of the municipality that the municipality is excused until notice received. (7 McQuillan on Municipal Corporations, 2d Ed., sec. 2997; 43 C. J. 1042, sec. 1820; *Taylor* v. *Albany,* 239 App. Div. 217, 267 N. Y. Supp. 903; *Oklahoma City* v. *Hunter,* 119 Okl. 303, 249 Pac. 730; *City of Covington* v. *De Molay,* 248 Ky. 814, 60 S. W. (2d) 123.)

We find no error in the record and the judgment is affirmed.

ASSOCIATE JUSTICES ERICKSON and ANDERSON concur.

MR. CHIEF JUSTICE JOHNSON:

I concur in the result, for the reason that the record shows that the defect was caused by the city.

MR. JUSTICE ADAIR:

I concur in the result, but not in all that is said in the majority opinion.

The city's plea that the W. P. A. installed the catch basin and the evidence that the same was constructed in an improper, unworkmanlike, inefficient and defective manner in my opinion, remove the case from the pale of the "actual notice statute," Chapter 122 of the 1937 Session Laws. (See *City of Covington* v. *Webster,* 33 Ky. Law Rep. 649, 110 S. W. 878; *Burger* v. *City of Philadelphia,* 196 Pa. 41, 46 Atl. 262; *Harper* v. *City of East Orange,* 105 N. J. L. 193, 143 Atl. 435.) The labor having been supplied by the W. P. A., it is clear that the project for this work on the city's streets and alleys was sponsored, authorized and directed by the defendant city.

While the W. P. A. supplied the labor, yet the defendant city supplied the material, plans and supervision and, in the eyes of the law the workmen were performing the work for the city. In *City of Grandview* v. *Ingle,* Tex. Civ. App., 90 S. W. (2d) 855, 857, it is said:

"It is true that the laborers who removed and failed to replace the slab were working under the National Industrial Recovery

Act and were receiving their pay from the federal government, but these are not the controlling issues. (39 C. J. 1270, sec. 1456.) 'A servant may be loaned or hired by his master for some special purpose so as to become, as to that service, a servant of the party to whom he is loaned or hired, and to impose on the latter the usual liabilities of a master.' (39 C. J. 1274; *Missouri, K. & T. R. Co.* v. *McGlamory*, Tex. Civ. App., 34 S. W. 359, 361; *Gulf, C. & S. F. R. Co.* v. *Shelton*, 96 Tex. 301, 73 S. W. 165.) * * *

"We think it is made to appear from the facts heretofore recited that the work in question was being done with the knowledge and consent and under the direction of the municipal officers who had authority to have the work done. * * * It is admitted that McCown and the mayor knew that the ditch was being cleaned and the walk repaired by the relief workers. Under the provisions of the Penal Code (Penal Code, Art. 784), they could have prevented such interference with the streets, but, instead of doing so, they selected the foreman who was to have charge of the relief workers in doing the work in question, and they referred to him all requests for similar work throughout the city. They inspected the work being done by said workmen at the place in question a few hours prior to the accident. It is clear, therefore, that the defect in the crosswalk was caused by workmen who were performing work for the city, with the knowledge and consent and under the direction of the municipal officer of the city, and therefore the municipality is liable for the damages proximately caused thereby. * * *"

The instant case is most similar to the *City of Grandview case,* supra, wherein, respecting the necessity of notice of the defect *before* the injury, the court said: "If the defective condition is due to the act of the municipality itself or of its contractors or employees, no other notice of any kind, either actual or constructive, is necessary in order to render the municipality liable for damages proximately caused thereby." (See, also, *Tyler* v. *City of Richmond,* 168 Va. 308, 191 S. E. 625.)

In *Nevala* v. *City of Ironwood,* 232 Mich. 316, 205 N. W. 93,

232

94, 50 A. L. R. 1189, the court said: "When, however, the dangerous condition is caused by agents of the city in the prosecution of their employment, the rule of *liability is not based on notice and failure to repair, but upon the creation of a dangerous condition by the city."* (Emphasis mine.)

Rehearing denied November 16, 1943.