## SCHURMAN et al. v. AMERICAN STORES CO.

### No. 5291.

Circuit Court of Appeals, Fourth Circuit.

Nov. 13, 1944.

Cornelius H. Doherty, of Clarendon, Va. (Tucker, Bronson, Satterfield & Mays, of Richmond, Va., on the brief), for appellants.

Gardner L. Boothe, of Alexandria, Va., for appellee.

Before SOPER, DOBIE and NORTHCOTT, Circuit Judges.

SOPER, Circuit Judge.

This suit was brought by American Stores Company of Delaware, lessee of a store property in Alexandria, Virginia, against the lessor, to recover the amount of a judgment in the sum of $10,000 obtained by a person injured by the defective condition of the premises against Acme Markets, Inc., of Delaware, a wholly owned subsidiary of the plaintiff. In the pending case the American Stores Company sued for itself and for its subsidiary. The case was tried before the court without a jury and resulted in a judgment for the plaintiff.

The leased property consists of a lot 100 by 170 feet, on which a store 50 feet by 100 feet is situated. The remainder of the lot is available to patrons of the store for parking purposes and is paved with concrete or some similar surface.

The lease is on a printed form furnished by the lessee. In the printed portion of the lease the following agreements, amongst others, occur:

"During the said term lessee will keep said premises in good condition, order and repair, * * * 'and at the termination of said term will deliver up the said premises in good condition, order and repair, reasonable wear and tear, and damage by accidental fire excepted.

  *  *  *  *  *  *

"Lessor further agrees to * * * keep roofs in repair, and agrees that if any of lessee's merchandise or equipment is destroyed or damaged by reason of water from the roof, * * * the lessee may deduct from the rent, a sum sufficient to reimburse lessee for said damage."

"Lessor agrees to keep pavement in repair and agrees to indemnify lessee for any loss incurred by it as a result of failure of lessor to so repair and maintain, and lessor further agrees that if said repairs are not made by lessor within ten days, lessee will have the privilege of making repairs at expense of lessor and deduct costs of repairs from said rental."

Immediately following these provisions is a blank space in the form in which the following agreement is typewritten: "Les-

sor agrees to make all necessary repairs to store, putting same in first class condition, and agrees to repair surface of parking lot, putting same in first class condition and install a flood light on parking lot to be located to meet lessee's requirements. It is understood and agreed should the lessor be unable to complete repairs on or before January first, 1941, the rental for the month of January will be pro rated from the time the Lessee takes possession."

A previous tenant had erected on the parking lot a sign supported by two large posts. When this tenant moved out and the plaintiff's tenancy began, the posts were sawed off several inches above the ground, leaving projections above the surface of the parking lot. An accident occurred a few weeks later when a customer of the store tripped over one of the projections at night and received serious and permanent injuries. He sued Acme Markets, Inc., as the operator of the store and secured a judgment for $10,000 which was affirmed on appeal. See Acme Markets, Inc. v. Remschel, 181 Va. 171, 24 S.E.2d 430. The judgment was paid by the insurer of Acme Markets, Inc.

When American Stores Company took over the property it placed a sign on the store building stating that it was an Acme Market and a sign in the window which contained the words, "Owned and Operated by American Stores Company". The complaint in the pending case alleged that on January 1, 1941, American Stores Company, through its wholly owned subsidiary, took possession of the demised premises, and in the suit in which the judgment for $10,000 was recovered it was assumed that the business was being operated by Acme Markets, Inc. The testimony in the pending case, however, indicated and the District Judge found that from the inception of the occupancy the store was operated by the American Stores Company.

Upon these undisputed facts the District Judge held that the lessor had broken its agreement to keep the premises in repair and to indemnify the lessee for any loss it might suffer from breach of this agreement; and that American Stores Company, as lessee, had the right to sue in its own name in this action on account of the loss sustained for the benefit of itself and of its wholly owned subsidiary.

On the part of the lessor it is contended in the first place that American Stores Company has no right to recover in this suit since it is not the real party in interest, as defined by Rule 17(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. It is said that American Stores Company cannot sue on its own account since the loss was not suffered by or paid by it but by Acme Markets, Inc.; and that it cannot sue for the benefit of the latter corporation on the ground that the lease was made for the latter's benefit because there is nothing in the lease to indicate that the agreement of the lessor to indemnify was made for the benefit of any one but American Stores Company, the named lessee. It is argued that the ownership by American Stores Company of all the stock of Acme Markets, Inc., does not destroy the corporate identity of the latter or justify the court in ignoring its existence as an independent legal entity in this case.

We pass by these contentions because under our construction of the lease, the lessor is not bound to indemnify either corporation for the amount of the judgment. Ordinarily a lessor is not required either to put the leased premises in good condition at the beginning of the lease or to keep the premises in repair unless he specifically agrees to do so. See Adams Grain & Provision Co. v. C. & O. Ry. Co., 118 Va. 500, 502, 88 S.E. 171. The rule is generally recognized as well appears from an examination of the authorities cited in 32 Am.Jur., Landlord and Tenant, §§ 657 and 705; and in § 786 of Shearman and Redfield on Negligence, Revised Edition, 1942, an authority which is cited with approval by the Virginia courts. See Smith v. Wolfsiefer, 119 Va. 247, 89 S.E. 115. In the pending case the lessee itself agreed generally to keep the premises in repair and the lessor assumed an obligation to repair only in certain named particulars, to wit: (1) to put the store in first class condition at the beginning of the term; (2) to put the surface of the parking lot in like condition; (3) to keep the roofs in repair; and (4) to keep the pavement in repair.

As to the last two items, it is especially noteworthy that the lessor agrees to indemnify the lessee for any loss resulting from a breach of the contract, while the agreements of the lessor to put the store and the parking space in good condition contains no indemnity in case of breach. We do not think that this distinction can be overlooked. The first two items relate to the condition of the premises at the be-

ginning of the lease and provide for the postponement of the rental until they have been accomplished, while the last two items relate to maintenance in good repair during the term of the lease. The new tenant was not obliged to enter until the store and parking space had been put in good condition but when these portions of the premises had been attended to, it became the duty of the lessee to maintain them in repair. Thereafter the lessor's duty of repair was limited to the pavement and the roofs. This distinction was unimportant in the view of the District Judge who concluded that the word "pavement" and the words "surface of the parking lot" had the same meaning. We do not think that this view is tenable. Not only is there a change in terminology in successive sentences in the lease, but the word "pavement" occurs in the printed portion of the lease while the words "surface of the parking lot" are typed in the blank space left in the printed form so that it may be adapted to local conditions. "Pavement" doubtless refers to the public sidewalks on which a store usually abuts, while "surface of the parking lot" refers to the vacant area of the leased premises which, in this particular case, was available for customers' cars. We cannot ignore the presence of an indemnity agreement in one clause and its omission from another. It is urged that the word "pavement" should not be given the significance of sidewalk because in Virginia a municipal corporation is liable for injuries incurred through defective streets and sidewalks. See, City of Richmond v. Rose, 127 Va. 772, 102 S.E. 561, 105 S.E. 554; Buck v. City of Danville, 177 Va. 582, 15 S.E.2d 31. But, it must be borne in mind that the printed form was provided for general use in many localities and that whatever may be the ordinary liability in Virginia of the abutting owner for injuries caused by a defective sidewalk, conditions may occur in Virginia and elsewhere under which such liability exists. See, Price v. Travis, 149 Va. 536, 140 S.E. 644, 56 A.L.R. 209; Shenandoah Valley Loan & Trust Co. v. Murray, 120 Va. 563, 91 S.E. 740; Schlossberg v. Brugh, 167 Va. 49, 52, 187 S.E. 487; Citizens Svgs. Bank v. Covington, 174 Md. 633, 199 A. 849; 40 C.J.S., Highways, § 253; 25 Am.Jur., Highways, § 364.

■■ It remains to inquire, in the absence of an agreement of indemnity, what is the measure of damages to which the lessor must respond for failure to perform the agreement to put the surface of the parking space in good condition. We find no Virginia decisions, but the general rule is that in such a case the lessor is liable only for the cost of the repairs, any loss of use to which the lessee may have suffered from the breach, and any special damages that are reasonably within the minds of the parties. Shearman and Redfield on Negligence, § 786; 32 Am.Jur., Landlord and Tenant, §§ 714, 717; 36 C.J., Landlord and Tenant, §§ 881, 882. None of these conditions of liability is found in this case. The cost of the repairs was borne by the lessor who remedied the defect after the accident happened. There was no interference with the lessee in the use of the premises; and it cannot be said, in view of the significant omission from this part of the lease of the agreement of indemnity which was set out in another part of the contract, that the loss suffered by the occupant in paying the judgment was within the contemplation of the parties.

■ The case would be more difficult if we were inquiring as to the liability of the lessor in a suit brought against him for personal injury of the lessee or an invitee of the lessee caused by a defective condition which the lessor had agreed but failed to repair. The authorities on the rule to be applied in such a case are not in accord. In some jurisdictions it is said that the liability of the lessor is limited to the cost of the repairs; while in others, the lessor is liable for the bodily harm caused by the condition of disrepair. See, 32 Am.Jur., Landlord and Tenant, §§ 723, 724; Restatement of Torts, § 357. Even in jurisdictions which hold the stricter view, the liability of the lessor is affected by the knowledge of the injured party with respect to the condition of disrepair. In the pending case there can be no doubt that the operator of the premises was liable to the injured person, as the Virginia courts have held, because the officials of the Store Company had full knowledge of the condition of the parking space and could have caused the projection to be removed at the expense of the lessor if they had seen fit to do so. The lessor may also have been liable, but that fact does not justify a suit based upon the erroneous assumption that the lessor agreed to indemnify the lessee for any loss resulting from the lessor's failure to put the paved surface of the parking space in good condition. From the standpoint of the injured party, the occupant of the

premises was as culpable as the lessor in any view of the law, and the agreement of the lessor to make the repairs did not excuse the lessee's neglect. See, Olson v. Schultz, 67 Minn. 494, 70 N.W. 779, 36 L.R.A. 790, 64 Am.St.Rep. 437; Shearman and Redfield on Negligence, § 791.

The judgment of the District Court must be reversed.