# �export Richmond

**FLORENCE E. NOLAN v. CITY OF RICHMOND.**

June 8, 1953.

Record No. 4095.

Present, All the Justices.

The opinion states the case.

*John W. Fussell, Stuart L. Williams,* for plaintiff in error.

*J. Elliott Drinard, M. Dannehl Aldridge, Jr.,* for defendant in error.

WHITTLE, J., delivered the opinion of the court.

Florence E. Nolan proceeded by motion for judgment against the City of Richmond alleging that she had been injured in a fall resulting from a defective condition which the defendant negligently permitted to exist in a sidewalk.

The case was tried before a jury on June 15, 1951, resulting in a verdict for the plaintiff in the sum of $3,500. The city

moved to set aside the verdict as contrary to the evidence on the grounds:

1. "* * * That the plaintiff was guilty of contributory negligence as a matter of law * * *.", and

2. "That the city did not have proper notice * * * of the * * * defect, and that the evidence does not disclose either actual or constructive notice of the existence of the defect."

On June 27, 1951, the court sustained defendant's motion to set aside the verdict, and over plaintiff's objection entered final judgment for the defendant. We granted the plaintiff a writ of error.

█ The city has abandoned its contention outlined in ground No. 2 above, leaving the sole question for decision: Was the plaintiff guilty of contributory negligence as a matter of law?

The evidence disclosed that the plaintiff lived in the city of Richmond, at 312 West Twelfth street. This had been her home for approximately three years. On the morning of the accident she took her baby to her next-door neighbor who customarily kept the child during the day while the mother worked. It was Mrs. Nolan's practice to take a bottle of milk for the child's use each day. On this particular morning, February 27, 1950, the milk had not been delivered when the child was taken to the neighbor's home. Leaving the child, Mrs. Nolan returned to her home and dressed for work. As she came out of the house she observed that the milk had since been delivered by the milkman and she proceeded with the bottle toward the neighbor's home, when the bricks in the sidewalk gave way, throwing her to the street, causing the injury complained of.

The evidence further disclosed that the defective area had progressively developed in the sidewalk between plaintiff's home and the home of her neighbor. The city had attempted to repair this obvious defect in August, 1949. Within a few weeks after the repairs had been attempted the foundation under the bricks began to sink and the depression gradually enlarged. The plaintiff knew of the existence of the defect as she had to pass around it each day when she delivered her child to the neighbor's home. On the day of the accident Mrs. Nolan estimated that the hole in the sidewalk extended half the width of the walk from the property line toward the curb.

The plaintiff, in describing the deterioration of the sidewalk after the attempted repair in 1949, said that it had "started

to cave in, and bricks began to get loose and would go into the hole and would fill over and would get loose again.''

Plaintiff further testified:

''Q. On the date of the accident how large had the hole developed, what portion of the sidewalk did it cover?

''A. I can't say for sure, but imagine it was every bit half the sidewalk.

\* \* \* \* \* \*

''A. \* \* \* As I proceeded to pass the hole the bricks gave way and threw me in the street \* \* \*.

''The Court: Did you walk in the hole or not?

''The Witness: No, sir, I did not.

''Q. Will you tell the gentlemen of the jury, and give them the best estimate you can, how far you walked away from the hole as you passed?

''A. I imagine I might have walked half the distance you have to walk. I imagine you have about this much (indicating) and I guess I walked about half of it. I don't know exactly, but I imagine I walked about half of it.

''Q. You walked where you had walked before?

''A. Yes, sir; everybody was going to and from work passing right by there.

''Q. You attempted to go a safe distance?

''A. Yes.''

(On cross examination)

''Q. How far would you say this defect extended into the sidewalk?

''A. I imagine every bit half the sidewalk; it might have gone over that much (indicating).

\* \* \* \* \* \*

''Q. Did you state in your testimony at the time you stepped on the bricks near the hole they gave way beneath you?

''A. Yes, sir, they did.

''Q. Was that nearer to the property line, or nearer to the curb?

''A. Nearer to the curb.''

The city admitted repairing the sidewalk in 1949 and attempted to show by Melvin C. Allen, a draftsman employee, that after the accident the hole in the sidewalk was 3 feet 3½

inches wide, leaving 3 feet 4 inches between the edge of the hole and the curbing, the entire walk being 6 feet 7¼ inches wide.

This evidence was introduced in an attempt to discredit Mrs. Nolan's testimony regarding the condition of the sidewalk at the time of the accident. She had made no exact measurements and her statement as to the size of the hole and the width of the remaining portion of the sidewalk which appeared safe for use were mere estimates. This created a factual question for the jury to decide. *Sink, et al.* v. *Masterson,* 191 Va. 618, 623, 61 S.E. 2d 863, 865.

A photograph taken by the city after the accident graphically shows the faulty construction of the sidewalk. The bricks which formed the surface of the sidewalk had been carelessly laid upon an infirm dirt foundation. In the half of the walk, next to the property line, the bricks had become loose or disintegrated, leaving the other half of the walk apparently in good condition. The plaintiff knew of the defect and attempted to walk around it, thinking she was on firm ground. She did not walk in the hole. She says, "As I proceeded to pass the hole the bricks gave way and threw me in the street * * *."

Mrs. Nolan was not guilty of contributory negligence as a matter of law. The question of contributory negligence in this instance was for the jury, and the instructions on the subject were highly favorable to the city's cause.

The facts in this case clearly distinguish it from the cases relied upon by the defendant. In *Hill* v. *City of Richmond,* 189 Va. 576, 584, 53 S. E. 2d 810, Justice Buchanan, speaking for the court, said:

"Here the plaintiff knew of the existence of the depression; he passed by it frequently and had seen it many times. It was over near the curb to his left. There was plenty of room on the right for him to walk, where he would not have stepped into the depression. There was nobody nor was there anything on the street to distract his attention, and no object that he had to avoid. Yet, without any reasonable excuse for his forgetfulness and inattention, and with a perfectly safe and convenient way in front of him on the right of the sidewalk, he failed to pay attention to where he was going, carelessly walked along the side where he knew the defect was and stepped into the depression with which he was entirely familiar."

And in *Town of Virginia Beach* v. *Starr,* 194 Va. 34, 36, 72 S. E. 2d 239, 240, we said:

"We hold that Mrs. Starr was guilty of contributory negligence as a matter of law which bars her recovery.

"The evidence is without dispute that the condition of the sidewalk was open and obvious to anyone. The condition was certainly obvious to Mrs. Starr. She admits that she saw the 'defect' and recognized it as a dangerous place. There was a smooth surface five feet on each side of the defect, where she could have walked in safety, yet she chose to undertake to walk over the 'dangerous' crevice. Then her foot slipped, causing her to fall.

"We have repeatedly held that where a defect is open and obvious to persons using a sidewalk it is their duty to observe the defect. Where there is no excuse for not seeing the defect one cannot recover. *South Norfolk* v. *Dail,* 187 Va. 495, 47 S. E. 2d 405."

The defect causing the injury to the plaintiff in the instant case was not open and obvious to her. She carefully sought to avoid the only defect of which she had knowledge. She was walking around the obvious defect, in an apparent place of safety, when the bricks gave way and threw her to the street. The city had constructed this sidewalk for the use of the public and was charged with knowledge of its faulty construction.

Clearly a city is not an insurer of persons using its streets and sidewalks, but there is a duty resting upon a municipality to keep its streets and sidewalks in a reasonably safe condition.

For the reasons stated the judgment of the trial court is reversed, the jury's verdict reinstated, and final judgment here entered thereon.

*Reversed and final judgment.*