## Richmond

MARY E. WEST v. CITY OF PORTSMOUTH.

November 22, 1954.

Record No. 4267.

Present, Eggleston, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*William L. Parker*, for the plaintiff in error.

*R. C. Barclay*, for the defendant in error.

SMITH, J., delivered the opinion of the court.

The plaintiff, Mary E. West, proceeded by motion for judgment against the city of Portsmouth alleging that she

had been injured in a fall resulting from a defective condition which the city negligently permitted to exist in one of its sidewalks. A jury returned a verdict for the plaintiff in the sum of $5,000.00, which verdict the city moved to set aside as contrary to the law and the evidence. The trial court sustained the city's motion to set aside the verdict and entered final judgment for it, to which action of the trial court we granted the plaintiff this writ of error.

The questions presented for our decision are: 1. Does the evidence disclose the existence of an actionable defect in the sidewalk? 2. Did the city have notice, either actual or constructive, of the alleged defective condition? 3. Was the plaintiff guilty of contributory negligence as a matter of law?

The evidence disclosed that at the time of the injury complained of the plaintiff lived at number 21 North Middle street in the city of Portsmouth and had resided there for the preceding fifteen or sixteen years. It was "drizzling and kind of dark" on the morning of July 27, 1950, when the plaintiff, who was 80 years old and in good health, left her home and proceeded south on Middle street to a grocery on the corner of Glasgow and Middle streets, a route she testified she traveled "several times each week." On the way she successfully traversed the allegedly defective sidewalk, but upon returning from the grocery to her home she fell in front of dwelling house number 115 Middle street and sustained her injury.

The sidewalk where the plaintiff fell, measured from the curb to house number 115, was twelve feet one inch wide. However, a set of steps leading to the house and a small planting area in which stood a tree six inches in diameter impinged upon this width. The actual width of the usable sidewalk at the scene of the accident, measured from the end of the planting area to the foot of the steps, was six feet four inches. This sidewalk was constructed of bricks laid in a herringbone design on a cushion of tamped sand.

The plaintiff's account of how the accident occurred is difficult to follow. She testified that "I was going along

and everything looked good to me, and I put my foot down and the bricks was underneath and it was a sink and my foot just tripped." Then in answer to how large the sink looked to her, she made the following comment:

"A. Just a hole in the sink. It went down slanting, you see. After the curb it went down slanting, and there were leaves and everything and a big tree there, tree roots and everything, and I can't tell you.

"Q. You say there were some tree roots on the street?

"A. I didn't get to the tree roots. I don't know what you call it. I thought I was all right going home, but my foot tripped. It had been raining."

The plaintiff further testified that after she had fallen, she saw "a piece of loose brick laying down there" and that "there was nothing but loose and uneven bricks that I stepped on."

The plaintiff's granddaughter, who was not present at the time of the accident, but who later in the day inspected the sidewalk in front of number 115 Middle street, testified that there was a half brick sticking up "in front of the step" and that she replaced it in its normal position. These two witnesses were the only persons called by the plaintiff to prove a defect in the sidewalk. However, the evidence also showed that on July 31, 1950, four days after the accident, the sidewalk in front of dwelling house number 115 Middle street was repaired by employees of the city, one of whom died before the trial. The employee living at the time of trial testified that there were no loose bricks and that the repair made consisted solely of replacing worn bricks with new ones to eliminate a slight depression. These city employees were regularly employed in repairing sidewalks and on this particular occasion acted without specific instructions from their superiors. Before this repair was made, plaintiff's son, who for some unexplained reason did not testify at the trial, was asked to inspect the site and did so.

In most American jurisdictions, irrespective of any statute expressly imposing liability, municipal corporations

are held liable for injuries resulting from their failure to keep streets and sidewalks in a reasonably safe condition. 25 Am. Jur., Highways, § 348, p. 641; 63 C. J. S., Municipal Corporations, § 782, p. 88; 19 McQuillin, Municipal Corporations, 3d ed., § 54.01, p. 6; Lile, Notes on Municipal Corporations, 3d ed., § 83(2), p. 47. However, a city is not an insurer against accidents upon its streets and sidewalks, and its duty is discharged if it exercises ordinary care to keep them in a reasonably safe condition for travel, in the usual modes, day or night. 19 McQuillin, Municipal Corporations, 3d ed., § 54.11, p. 48; Lile, Notes on Municipal Corporations, 3d ed., § 84(a), p. 48. It is generally held that before there can be a recovery for injuries sustained because of the defective condition of a street or sidewalk, the following must be proved:

"1. A defective condition such as to create liability, provided the other necessary elements are present. This condition may be one created by the municipality or by third persons.

"2. Actual or constructive notice to the municipality of the defective condition of the street before the accident. The exceptions, when notice is not necessary, are (a) where the defect is created by the municipality, (b) where the defect is caused by a licensee under a permit granted by the municipality, or (c) where a statute or charter provision otherwise provides.

"3. Time to put the street in a reasonably safe condition after notice (where notice is necessary) of the defect.

"4. It must appear that the defective condition of the street was the proximate cause of the injury.

"5. No recovery can be had if the person injured was guilty of contributory negligence.

"6. Notice of the injury and the cause thereof must be given within a certain time after the accident, as provided for by statutes or charter provisions in most states." 19 McQuillin, Municipal Corporations, 3d ed., § 54.09, p. 46. See 25 Am. Jur., Highways, §§ 354-358, p. 647; 63 C. J. S.,

Municipal Corporations, § 795, p. 108 and §§ 824-831, p. 161; Lile, Notes on Municipal Corporations, 3d ed., §§ 85 (b), 86, p. 49.

These principles have been frequently applied by this court. See 17 Michie's Jur., Streets and Highways, §§ 118, 123, 124 and 125, p. 614 *et seq.*, and the cases there cited.

It is not sufficient to hold a city liable for an injury sustained upon one of its sidewalks or streets where the plaintiff merely proves a defect in such street or sidewalk. As a general' rule he must go further and show notice, actual or constructive, to the city of the existence of the defect. *Tyler* v. *City of Richmond*, 168 Va. 308, 191 S. E. 625; *City of Portsmouth* v. *Houseman*, 109 Va. 554, 65 S. E. 11; 17 Michie's Jur., Streets and Highways, § 123, p. 622.

"In an action against a municipal corporation for the injuries resulting from its negligence in the management of its corporate property, notice, either express or implied, must be shown. If the defect causing the injury had existed for such length of time that proper diligence would have discovered it, then no notice need be proved; but if the defect arises otherwise than from faulty structure, or the direct act of the corporate authorities or its agents and be a recent defect, it is generally necessary to show that the town authorities had knowledge thereof a sufficient time before the injury to have, by reasonable diligence, repaired it or that they were negligently ignorant of it." 13 Michie's Jur., Municipal Corporations, § 105, p. 469.

In *Richmond* v. *Rose*, 127 Va. 772, 102 S. E. 561, the defendant city was on notice because the defect complained of had existed for a considerable length of time. In *Buck* v. *Danville*, 177 Va. 582, 15 S. E. (2d) 31, the defendant city was on notice because the defect complained of had existed for over two years. And in *Nolan* v. *Richmond*, 194 Va. 943, 76 S. E. (2d) 126, the city had attempted to repair the defect and therefore had actual notice. Furthermore, in those cases where the plaintiff was unsuccessful because of his own contributory negligence, the primary negligence of

the city was established only on findings of notice by the city of actionable defects. *E. g., Richmond* v. *Courtney*, 32 Gratt. (73 Va.) 792 (actual notice); *Hill* v. *Richmond*, 189 Va. 576, 53 S. E. (2d) 810 (defect had existed for six years prior to injury).

Here the plaintiff's own testimony clearly demonstrated that she was uncertain as to the cause of her fall, and the granddaughter's testimony failed completely to establish that the half brick sticking up "in front of the step" was an actionable defect or that it had any relation to the plaintiff's fall. In fact, it appears that the two witnesses were referring to different locations.

But even if it be assumed that there was an actionable defect which was the proximate cause of plaintiff's injury, there could still be no recovery because there was no evidence that the city had any notice of the defect. There was no suggestion that the defect was due to faulty construction on the part of the city, nor was it contended that the city had actual notice of any defect. The most that was shown was that for some unknown reason a defect had come into being and had caused plaintiff's injury. Standing alone this does not support a constructive notice. Moreover, the uncontradicted evidence of local residents was to the effect that they had never seen a defect at the place involved. It is therefore abundantly clear that any defect which may have existed at the time of the accident was one of recent origin and that the city was not on notice of it.

The plaintiff having failed to establish actionable negligence on the part of the city, it is unnecessary to discuss the question of plaintiff's contributory negligence. The action of the trial court in setting aside the verdict and entering the judgment under review was plainly right and therefore the judgment is affirmed.

*Affirmed.*