# Richmond

## City of Virginia Beach v. Mary L. Roman.

June 13, 1960.

Record No. 5080.

Present, All the Justices.

The opinion states the case.

*Richard B. Kellam* (*Roy Smith; Kellam & Kellam*, on brief), for the plaintiff in error.

*Richard G. Brydges* (*Thomas C. Broyles*, on brief), for the defendant in error.

MILLER, J., delivered the opinion of the court.

■ Mary L. Roman, hereinafter called plaintiff, recovered a verdict for $4,000 against the City of Virginia Beach for personal injuries sustained by her while walking on city property. The city's motion to set aside the verdict as contrary to the law and the evidence was overruled, and judgment entered for plaintiff. We granted the city an appeal.

The accident occurred when plaintiff stepped into a hole in a grass plot located between the concrete walk which extends in a northerly and southerly direction along the Atlantic Ocean and a row of hotels which face eastwardly toward the walk and ocean. The city concedes that it owns the grass plot where the hole was located and that it was obligated to use reasonable care to keep that area in a reasonably safe condition. However, the city asserts that the evidence is insufficient to support the verdict because it fails to prove that the municipality had any actual or constructive notice of the existence of the defect in the grass plot.

The Traymore Hotel where plaintiff had been on vacation for several days before the accident is located on the ocean front at 7th street. A cement walkway extends eastwardly from the front of the hotel to the eighteen-foot wide concrete walk or bulkhead which extends northwardly from 7th street along the ocean front to 35th street, a distance of 1.8 miles. Between the concrete walk to the east and the line of hotels that front toward the ocean there is a grass plot thirty or forty feet wide, which extends the length of the concrete walk. On the western edge of the concrete walk there is a curb nine inches wide and six inches high, and on the walk, touching the inside of the curb, is an iron pipe ten inches in diameter which runs a considerable distance along the walk. It was placed there by the city's Erosion Commission, and sand is pumped through it by the city to prevent erosion and repair defects caused thereby. Pedestrians going to and from the hotels to the concrete walk have to step over the pipe in traversing that area.

During the morning of August 7, 1957, a dry and sunny day, plaintiff had been on the beach, and about 10:30 a.m. while returning to the Traymore Hotel, she stepped from the concrete walk over the pipe and curbing into a hole in the grass plot just west of the curb. The depth of the hole was up to her knee, and upon stepping into it, she broke her leg. She testified that when she crossed the pipe onto the grass she did not see where she was stepping; she could not see directly behind the pipe though she could see a foot or two beyond the pipe.

She also stated that she did not notice whether there was grass over the hole; that it "could have been covered with grass," and that there was grass beside and opposite it.

The evidence shows that within the city limits there is considerable erosion of the beach area which manifests itself chiefly in and along the grass plot between the concrete walk and the line of hotels and other buildings. This erosion or washing out of sand and earth under the grass often causes holes to appear in the earth, sometimes suddenly and without previous indication, and at times it has been necessary that large areas be roped off for the protection of the public. To combat and rectify this condition the city established and maintains its Erosion Commission and conducts a control program, the purpose of which is to protect the beach, walk and adjacent area from and repair defects caused by erosion. Under the erosion control program there is constant inspection and examination of the pipe through which sand is pumped, and inspection of the grass plot and cement walk for evidence of defects. In making these inspections a truck containing several men travels up and down the concrete walk a number of times each day, and the men inspect the pipe and look at the grass plot, but they do not get out of the truck to press upon or probe the sod during their visual inspection of the area. If a defect is observed, the workmen leave the truck and make the necessary repairs. The hotels along the beach front customarily keep the lawns cut and their guests often sit upon the grass plot, use it for sunning, and quite frequently walk upon it in going to and from the beach. The erosion control crew does not cut the grass unless the hotels neglect to do so and allow it to grow six or eight inches high. One of the inspectors who observed the hole after the mishap testified as to its size and appearance as follows:

"Q. Did you observe this hole after the accident?

"A. Yes.

"Q. What was the size of it?

"A. I imagine about a foot, maybe a foot and a half.

"Q. About like that (indicating)?

"A. Yes.

"Q. The grass grew down in it?

"A. Yes. I guess that is what caved it in."

Plaintiff, having obtained a verdict and judgment, is entitled to have the evidence viewed in the light most favorable to her. The judgment may not be vacated "unless it appears from the evidence

that such judgment is plainly wrong or without evidence to support it." Section 8-491, Code 1950. Burks *Pleading and Practice*, 4th ed., §§ 427, 428. Yet if the judgment is plainly wrong or without evidence to support it, then it is our duty to reverse it and set aside the verdict. *Thalhimer Bros., Inc.* v. *Buckner*, 194 Va. 1011, 76 S. E. 2d 215; *Holloway* v. *Smith*, 197 Va. 334, 88 S. E. 2d 909.

The record is wholly devoid of any evidence that even remotely tends to prove that the city had actual notice of this defect. It is, however, contended by plaintiff that the evidence is sufficient to show that the city had constructive notice of the defect because it was aware that erosion created an unusual and hazardous condition by causing holes and defects in the grass plot from time to time.

In her brief plaintiff's contention is stated thus:

"Since erosion has been such an intense problem at Virginia Beach and the City has formed a Commission to inspect and prevent erosion along the boardwalk, it then becomes a question of whether the employees of the Commission used reasonable or ordinary care in performing their duties. It is the contention of the plaintiff that the evidence discloses that visual inspections were not adequate and only by walking and probing in this area could such holes be prevented."

The evidence shows that holes and defects in this area attributable to erosion occur with more frequency than they do in other areas not subject to like conditions and that the city was aware of these facts. It was therefore incumbent upon the municipality to exercise care commensurate with the circumstances to keep its grass plot in a reasonable safe condition and to detect and remedy any defects that occurred in the area.

The uncontradicted testimony discloses that the city usually inspected this area several times a day and made the necessary repairs when any defects were found. There is no evidence to indicate that walking upon, pressing upon or probing in the long grass plot would have been expedient or helpful to locate holes or washed out places under the sod caused by erosion. Nor is there any evidence to show that pressing, walking upon or probing in the earth is practiced in other areas similarly affected.

There was no suggestion that the defect was due to faulty construction or in any way caused by the city.

In the final weighing of the evidence it is still incumbent upon the plaintiff to prove that the city had actual or constructive notice of the defect in time to have remedied it before liability attaches.

"In an action against a municipal corporation for the injuries resulting from its negligence in the management of its corporate property, notice, either express or implied, must be shown. If the defect causing the injury had existed for such length of time that proper diligence would have discovered it, then no notice need be proved; but if the defect arises otherwise than from faulty structure, or the direct act of the corporate authorities or its agents and be a recent defect, it is generally necessary to show that the town authorities had knowledge thereof a sufficient time before the injury to have, by reasonable diligence, repaired it or that they were negligently ignorant of it." 13 M. J., Municipal Corporations, § 105, p. 469. *Tyler* v. *City of Richmond*, 168 Va. 308, 191 S. E. 625; *City of Portsmouth* v. *Houseman*, 109 Va. 554, 65 S. E. 11.

"But even if it be assumed that there was an actionable defect which was the proximate cause of plaintiff's injury, there could still be no recovery because there was no evidence that the city had any notice of the defect. There was no suggestion that the defect was due to faulty construction on the part of the city, nor was it contended that the city had actual notice of any defect. The most that was shown was that for some unknown reason a defect had come into being and had caused plaintiff's injury. Standing alone this does not support a constructive notice. * * *" *West* v. *City of Portsmouth*, 196 Va. 510, 515, 84 S. E. 2d 503. *Erle* v. *City of Norfolk, et al.*, 139 Va. 38, 123 S. E. 364.

"Inasmuch as a municipal corporation, in the absence of statute is bound to exercise only ordinary care in keeping its streets and walks in a safe condition for the use of travelers, it cannot be made liable for injuries resulting from defects unless either express notice be brought home to it, or the defect be shown to be so notorious as to be observable by all for a sufficient time to enable the corporation to repair.

"In Virginia, it is not sufficient for a plaintiff merely to prove a defect in the street or sidewalk, and an injury resulting to him therefrom, in order to hold the city liable therefor. He must go further, and as a general rule must allege and show notice, actual or constructive, to the city of the existence of the defect. Accordingly, where defects in the streets are caused by others, the municipal corporation is held liable only by showing it had either actual or constructive notice of the defects in time to have them removed. Actual notice must be to some of its officers or servants having supervision of its

streets or with authority to direct work thereon. Constructive notice is where the defect complained of has existed for such a length of time that by the exercise of ordinary care it could have been discovered." 17 M. J., Streets and Highways, § 123, p. 622.

Here there is no evidence to show when the defect occurred or whether it was observable or could have been detected by a more diligent or exhaustive inspection of the area than was had. No one saw the hole or knew of the defect before the plaintiff was injured. She only became aware of it simultaneously with her injury. Insofar as the evidence shows there may have been merely a washed out place of recent origin under the sod with no observable hole or depression in the earth when plaintiff stepped across the pipe onto the grass.

"It is not sufficient to hold a city liable for an injury sustained upon one of its sidewalks or streets where the plaintiff merely proves a defect in such street or sidewalk. As a general rule he must go further and show notice, actual or constructive, to the city of the existence of the defect. * * *" *West* v. *City of Portsmouth, supra,* at page 514.

Mere proof that due to erosion an unusual and hazardous condition obtains at times in an area owned by the city and used by the public and that an injury was caused by a defect therein that was not detected by reasonable inspection or shown to exist at any time prior to the moment of mishap is, without more, insufficient to impose liability upon the city.

The judgment must be reversed, the verdict set aside and judgment entered for the city.

*Reversed and final judgment.*