# CIRCUIT COURT OF THE CITY OF RICHMOND

Lorey Shamlee

v.

City of Richmond

October 25, 1982

Case No. LE-1185

By JUDGE WILLARD I. WALKER

This matter is before the court on the defendant's motion to set aside the jury's verdict in this case. Viewed in the light most favorable to the plaintiff, the essential facts in this case are as follows.

The plaintiff, at night, was operating her vehicle on Elkhardt Road crossing Hull Street Road in the City of Richmond. After she had traversed the intersection and passed through a "swale" or slight depression where Hull Street Road and Elkhardt Road join, she felt something grab the bottom of her car. Her car came to an abrupt stop and the plaintiff sustained injuries as a result of this occurrence. A passerby (who did not testify) pulled from underneath the plaintiff's car a section of pipe approximately one to one and one-half feet long and six inches in diameter. Upon inspecting the area, this section of pipe was found to have been previously connected to a pipe that served as an access to underground water lines located beneath Elkhardt Road. The pipe at the top had a cover similar to a small six-inch man-hole and this cover was supposed to have been flush with the surface of the street.

Plaintiff testified that most of the pipe was shiny, although covered with dirt and mud, except for six inches at the top of the pipe which had no dirt or mud on it

and which was old looking and worn in appearance. The obvious inference from this testimony was that six inches of the pipe in question was "above ground" in some fashion and has been exposed to weathering. The plaintiff's testimony was totally unclear as to whether the pipe was six inches above the surface or grade of the street or whether the street surface had sunk, leaving six inches of the pipe exposed. The plaintiff did not know what portion of her car had struck the pipe, but obviously some portion had, resulting in a portion of the pipe being pulled from the street.

The plaintiff produced a witness who lived in the area to testify about the pipe's condition. His evidence, in substance, was that it appeared to him that some construction work had been done in the street next to the pipe, that heavy rains had washed away some of the road surface material, and that the pipe was, therefore, exposed six inches above the surface. It was likewise unclear from his testimony whether the pipe was six inches above the grade of the street or whether the street near the pipe had sunk six inches. The plaintiff's witness testified that this condition had been in the street for "one or two days at least," that he had driven around the condition to avoid striking it, and that he had not informed the City of the conditions. (Indeed, the parties concede the City had no actual notice of the alleged defect.)

The defendant called a witness who worked at the corner of the intersection and who parked consistently in the vicinity of the pipe. This witness worked seven days a week at the time in question and testified that no defect in the street or road work had ever existed in this location.

The defendant also called as witnesses employees of the City's Public Works Department who testified that the City's records showed no work in the street near this pipe at or near the time of this occurrence. The City employees further testified that this particular pipe had been inspected approximately one to one and one-half years before this occurrence and that nothing had happened to the street, nor was work done on the street since the last inspection. They also testified that no one had informed them of any possible defect.

This case presents the following issue: Assuming that a defect existed in the defendant City's street, had the defect existed for such a length of time that

in the exercise of diligence it should have been discovered and remedied?

A city is not an insurer of the safety of persons passing along its streets. It cannot be held liable in damages for an injury resulting from a defect in one of its streets, unless it be shown that it was negligent in not repairing such defect within a reasonable time after it knew or should have known of such defect; and what is a reasonable time is a mixed question of law and fact. *Portsmouth* v. *Houseman*, 109 Va. 554 (1909).

Plaintiff, having obtained a verdict and judgment, is entitled to have the evidence viewed in the light most favorable to her. The judgment may not be vacated unless it appears from the evidence that such judgment is plainly wrong and without evidence to support it. Yet, if the judgment is plainly wrong and without evidence to support it, then it is our duty to set aside the verdict. See *Thalhimer* v. *Buckner*, 194 Va. 1011 at 1013 (1953); *Holloway* v.*Smith*, 197 Va. 334 at 342 (1955).

It is debatable whether the plaintiff's evidence, as a matter of law, fails to establish a defect; however, even if we assume there was an actionable defect which was the proximate cause of plaintiff's injury, there could still be no recovery unless there was evidence that the City had notice of the defect, actual or constructive. Although the parties concede no actual notice, plaintiff contends that the evidence is sufficient to show that the City had constructive notice of the defect. The evidence offered by the plaintiff to support her contention of constructive notice upon the City was the testimony of one witness that the defect existed for at least one or two days. Standing alone, this does not support constructive notice. *West* v. *City of Portsmouth*, 196 Va. 510 (1954). "When constructive notice is relied upon, it is necessary to allege and prove by a preponderance of *satisfactory* evidence facts upon which the notice may be reasonably presumed." *Portsmouth* v. *Houseman*, *supra*, at 561.

The most that was shown by the evidence in this case was that for some unknown reason a defect had come into being and had caused the plaintiff's injury. On the final weighing of the evidence, it is still incumbent upon the plaintiff to prove that the City had actual or constructive notice of the defect in time to have

remedied it before liability attaches. *Virginia Beach v. Roman*, 201 Va. 879 (1960).

To hold a city liable for damages for an injury sustained without notice of the defect would be imposing strict liability upon a city for every defect that may arise.

The condition in question, even assuming that it is an actionable defect, was not so notorious, nor did it exist for such a length of time to impute constructive notice upon the City. The Virginia Supreme Court has made it clear that a city is not an insurer against accidents upon its streets, and its duty is discharged if it exercises ordinary care to keep them in a reasonably safe condition for travel, in the usual modes, day or night. *West* v. *City of Portsmouth, supra*, at 513.

Taking into consideration the number of city streets and the large geographical area the City of Richmond encompasses and all the circumstances surrounding this case, the existence of the defect for "at least one or two days" does not constitute constructive notice as a matter of law.